594 F.2d 291
 Fed. Sec. L. Rep. P 96,811
Anne C. MARTINDELL, Plaintiff,
v.
INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION, and
Harold S. Geneen, Director, Chairman and President of ITT,
Ted B. Westfall, Hart Perry and Francis J. Dunleavy,
Directors and Executive Vice Presidents of ITT, Raymond S.
Brittenham, Director and Senior Vice President-Law and
Counsel of ITT, and Howard P. James, President of
ITT-Sheraton Corporation of America, Defendants-Appellees.
Appeal of UNITED STATES of America.
 No. 192, Docket 78-6074.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 6, 1978.
Decided Feb. 14, 1979.
As Amended March 12, 1979.
 
 Robert G. Andary, Atty., Dept. of Justice, Washington, D. C. (Philip B. Heymann, Asst. Atty. Gen., G. Allen Carver, Jr., Atty., Dept. of Justice, Washington, D. C., of counsel), for appellant.
 Phil E. Gilbert, Jr., New York City (Elihu Inselbuch, Bernard J. Rosenthal, Gilbert, Segall & Young, New York City, of counsel), for defendants-appellees Geneen, Westfall, Perry, Dunleavy and Brittenham.
 Before MEDINA, MANSFIELD and MESKILL, Circuit Judges.
 MANSFIELD, Circuit Judge:
 
 
 1
 The Government, although not named as a party in this private action between others, seeks to appeal from an order entered on March 23, 1978, by Judge William C. Conner of the Southern District of New York, denying it access to transcripts of pretrial depositions of some 12 persons (including certain defendants in the action), which were taken pursuant to a court-approved stipulation to the effect that the depositions should be treated as confidential and used solely by the parties for prosecution or defense of the action. We affirm.
 
 
 2
 The action is a stockholders' derivative suit on behalf of International Telephone & Telegraph Corporation (ITT) against certain ITT officers and directors, charging them with waste of ITT assets through expenditures to influence 1970 elections in Chile. The suit was commenced in the Southern District of New York in June 1972 and terminated in January 1978 by a court-approved settlement and stipulation dismissing the complaint with prejudice. During the pendency of the action the plaintiffs took pretrial depositions of certain witnesses pursuant to a stipulation of confidentiality, "so ordered" by Judge Bauman, to whom the case was assigned before being transferred to Judge Conner, providing that the fruits of the depositions, including transcripts of testimony and documents furnished by the defendants, were to be made available only to the parties and their counsel and not to be used for any purpose other than the preparation for and conduct of the litigation.
 
 
 3
 In late 1977 the Government, although not a party to the suit, informally asked Judge Conner (first by telephone, then by letter dated February 13, 1978) for access to the deposition transcripts of the 12 witnesses[1] for use in the Government's investigation into possible violations of federal criminal laws (18 U.S.C. §§ 1621 (perjury), 1622 (subornation of perjury), 1001 (making of false statements to federal agency), 1505 (obstruction of justice), 371 (conspiracy)) by Messrs. Robert Berrellez, Edward J. Gerrity, Jr., and Harold S. Geneen in connection with activities related to the 1970 presidential election in Chile. The subject of the investigation was possible perjury by some or all of these three in testimony given in 1973 before a Subcommittee of the U. S. Senate investigating foreign activities of multi-national corporations and of the C.I.A. The Justice Department speculated that the pretrial deposition testimony might be relevant to its investigation into matters similar to those that had been the subject of the Martindell action and might be useful in appraising the credibility, accuracy and completeness of testimony given by witnesses in the Government's investigation or might provide additional information of use to the Government. The Government, moreover, feared that unless it could obtain the deposition transcripts, it would be unable to secure statements from the witnesses because they would claim their Fifth Amendment rights in any investigative interviews by the Government.
 
 
 4
 At Judge Conner's request, counsel for the defendants in the action furnished the Department of Justice by letter dated December 23, 1977, with a list of 14 witnesses who had been deposed in the case. However, defendants-appellees opposed the requested turnover of the deposition transcripts on various grounds. On March 20, 1978, the Department of Justice filed criminal informations against Berrellez and Gerrity after the latter had waived their right to presentment of evidence to a grand jury and a grand jury investigating the matter had been discharged. Simultaneously the Government announced that no other actions arising out of the investigation were contemplated.
 
 
 5
 On March 23, 1978, Judge Conner denied the Government's request, holding that the deposition testimony had been given in reliance upon the protective order, thus rendering unnecessary invocation by the witnesses of their Fifth Amendment rights, that the requested turnover would raise constitutional issues, and that principles of fairness mandated enforcement of the protective order. From this decision the Government appeals.
 
 DISCUSSION
 
 6
 The rather obvious threshold issue, which for some reason was not raised by appellees, is whether the Government, not being a party to this private civil action, has any right to seek a review of Judge Conner's order. If the Government had sought and obtained permission from the court to intervene in the action pursuant to Rule 24(b), F.R.Civ.P., for the limited purpose of seeking modification of the protective order, the district court could then have exercised its power under Rule 26(c), F.R.Civ.P., to modify or vacate the order and the resulting decision would be final as to the intervenor within the meaning of Title 28 U.S.C. § 1291, it being the only pending matter in the action. See Cobbledick v. United States, 309 U.S. 323, 330, 60 S.Ct. 540, 84 L.Ed. 783 (1940); United States v. United Fruit Co., 410 F.2d 553 (5th Cir.), Cert. denied, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969). In that event both the district court and we would have all parties properly before us. Moreover, the record reveals that the plaintiffs in the Martindell action, had it not been for Judge Conner's order, were prepared to turn over copies of the deposition transcripts to the Government. The Government, therefore, would have standing in the constitutional sense to seek review of the order, since it would be adversely affected by the court's refusal to modify or vacate it, see Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970). Since the Government is vested with both the power and the duty to obtain all relevant evidence needed for enforcement of federal criminal laws, it would also have prudential standing. See Warth v. Seldin, supra, 422 U.S. at pp. 499-501, 95 S.Ct. 2197.
 
 
 7
 The Government may not, however, simply by picking up the telephone or writing a letter to the court (as was the case here), insinuate itself into a private civil lawsuit between others. The proper procedure, as the Government should know, was either to subpoena the deposition transcripts for use in a pending proceeding such as a grand jury investigation or trial, in which the issue could be raised by motion to quash or modify the subpoena, see Rule 17(c), F.R.Crim.P., or to seek permissive intervention in the private action pursuant to Rule 24(b), F.R.Civ.P., for the purpose of obtaining vacation or modification of the protective order. See Nuesse v. Camp, 128 U.S.App.D.C. 172, 385 F.2d 694 (1967); All American Airways v. Village of Cedarhurst, 201 F.2d 273 (2d Cir. 1953); O'Keefe v. Boeing Co., 38 F.R.D. 329 (S.D.N.Y.1965); Mitchell v. Singstad, 23 F.R.D. 62 (D.C.Md.1959). Otherwise, as a non-party who would not be affected by the outcome of the action (as distinguished from a denial of intervention), the Government would neither have the right to seek relief in the action, Rules 7(b), 71 F.R.Civ.P.; Spangler v. Pasadena City Bd. of Educ., 552 F.2d 1326 (9th Cir. 1977), nor the right to appeal from a decision in the action, Utility Contractors Ass'n of New Jersey, Inc. v. Toops, 507 F.2d 83 (3d Cir. 1974).[2] Here the Government, a non-party, would not have been affected by the outcome of the Martindell action. Although a petition by a non-party for review of a district court order might be entertained as an application for a writ of mandamus against the district court, see Society of Professional Journalists v. United States District Court, 551 F.2d 559 (4th Cir. 1977), further opinion, Society of Professional Journalists v. Martin, 556 F.2d 706 (4th Cir. 1977), Cert. denied, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 771 (1978); see also Ex parte Uppercu, 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915); CBS v. Young, 522 F.2d 234 (6th Cir. 1975), this extraordinary writ would hardly be available here where the only purpose was to obtain modification of a pretrial order for investigative purposes.
 
 
 8
 Notwithstanding the foregoing we are faced with what amounts to informal permission being granted by the district court to the Government to intervene for the purpose of seeking modification of the order and with appellees' failure at any time to challenge either the Government's standing or its status as a non-party. Under the circumstances, the defendants clearly waived any objections to intervention, and Judge Conner's informal entertainment of the Government's application for vacation or modification of the protective order thus amounted to a De facto grant of permissive intervention pursuant to Rule 24(b). Klein v. Nu-Way Shoe Co., 136 F.2d 986 (2d Cir. 1943); Illinois v. Sarbaugh, 552 F.2d 768, 772 (7th Cir.), Cert. denied, 434 U.S. 889, 98 S.Ct. 262, 54 L.Ed.2d 174 (1977); Smartt v. Coca-Cola Bottling Corp., 337 F.2d 950 (6th Cir. 1964), Cert. denied,380 U.S. 934, 85 S.Ct. 941, 13 L.Ed.2d 822 (1965); see also French v. Gapen, 105 U.S. 509, 525, 26 L.Ed. 951 (1882); Myers v. Fenn, 72 U.S. (5 Wall.) 205, 18 L.Ed. 604 (1867).[3] Moreover, since the district court has already adjudicated the issues raised by the Government we are not disposed to remand the case to the district court for the rather wasteful procedure of requiring the Government formally to seek post hoc intervention that would undoubtedly be granted, with the result that the case would then be returned to us for review.
 
 
 9
 Turning to the merits, the Government, relying on Garner v. United States, 424 U.S. 648, 96 S.Ct. 1178, 47 L.Ed.2d 370 (1976), and Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), argues that it was an abuse of discretion on the part of the district court, out of solicitude for the witnesses' Fifth Amendment rights, to refuse the Government access to the deposition transcripts when the witnesses, without being under any compulsion or coercion, chose to testify. This, says the Government, amounted to a voluntary waiver or relinquishment by the witnesses of their Fifth Amendment privilege against self-incrimination. In the alternative, the Government contends that the deponents' Fifth Amendment rights should not in any event preclude the Government from having access to their deposition testimony in order to determine whether it was perjurious and therefore prosecutable.[4] See United States v. Mandujano, 425 U.S. 564, 576-78, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).
 
 
 10
 These arguments ignore a more significant counterbalancing factor the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., which is to "secure the just, speedy, and inexpensive determination" of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective represents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders.
 
 
 11
 On the other side of the ledger there is, of course, the public interest in obtaining all relevant evidence required for law enforcement purposes. However, as was noted by Judge Frankel when presented with substantially the same question in GAF Corporation v. Eastman Kodak Company,415 F.Supp. 129, 132 (S.D.N.Y.1976), "the Government as investigator has awesome powers" which render unnecessary its exploitation of the fruits of private litigation. Normally the Government may institute or continue a grand jury proceeding and, in connection therewith, subpoena witnesses to testify, regardless of whether they have already testified or furnished documentary evidence in civil litigation.[5] In addition, it may subpoena both witnesses and documents for the trial of charges already filed against others (in the present case, Berrellez and Gerrity). Should the witnesses then invoke their Fifth Amendment privilege, the Government has the power to offer immunity in exchange for their testimony pursuant to 18 U.S.C. § 6002, Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).[6]
 
 
 12
 After balancing the interests at stake,[7] we are satisfied that, absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation, either as evidence or as the subject of a possible perjury charge. GAF Corporation v. Eastman Kodak Company, supra; Zenith Radio Corp. v. Matsushita Electric Industrial Co., 1978-1 Trade Cases (CCH) P 62,019 (E.D.Pa.1978).
 
 
 13
 In the present case the deponents testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to testify. The case is thus easily distinguishable from Garner v. United States,supra, and United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1, relied upon by the Government, where each defendant had no basis other than his interpretation of his rights under the Fifth Amendment for expecting that his testimony would not be made available to the Government for use in a criminal prosecution. Here the witnesses were entitled to rely upon the terms of a concededly valid protective order and Judge Conner did not abuse his discretion in refusing to vacate or modify that order.
 
 
 14
 In view of the overriding policy in favor of enforcing the civil protective order, it becomes unnecessary for us to decide the Fifth Amendment issues raised by the parties.
 
 
 15
 The order of the district court is in all respects affirmed.[8]
 
 MEDINA, Circuit Judge (concurring in result):
 
 16
 I concur fully with Judge Mansfield's reasoned analysis by which he finds that the defendants have waived any objections to the Government's intervention and that Judge Conner's action on the Government's informal request amounted to a De facto grant of permissive intervention under Rule 24(b).
 
 
 17
 However, I do not agree with the "balancing" approach which forms an integral part of Judge Mansfield's discussion of the merits of this important appeal. The protective order at the heart of this case represents a formal agreement between all parties to the civil case which was approved by the District Judge then presiding. The essence of this order, as it is relevant to this appeal, is that the depositions taken of party and non-party witnesses were for use only in the civil litigation. I believe that such an agreement, if valid at the time made, should be honored without doing any balancing as to the benefits to be derived from disregarding it, and I have no doubt that there was ample basis for the approval of the order by Judge Bauman and Judge Conner. I would take a different view if the order had been improperly or "improvidently" granted. For these reasons I concur in the result reached by Judge Mansfield.
 
 
 18
 The protective order states in part that the depositions and transcripts "produced by the defendants" were to be used solely for "the preparation and conduct of the litigation of this action."[1] Judge Conner, in his orders filed on January 5, 1978 and March 23, 1978, interpreted this agreement as applying equally to all of the depositions taken in the civil action. The Government apparently concurs in this interpretation of the protective order. Before both Judge Conner and this Court the Government has argued that the protective order must be modified or vacated before it properly could gain access to the depositions. The Government has never argued that the depositions of non-party witnesses, including Harold V. Hendrix who is willing to turn over his deposition, are outside the scope of the protective order. Since the parties,[2] the lower court and the Government concur in this interpretation of the protective order, I see no reason for us to take a different position.
 
 
 19
 A plaintiff in a civil litigation is bound by the terms of an agreement he has made to restrict the access of non-parties, including the Government, to the products of discovery. This was the essence of Judge Frankel's decision in GAF Corp. v. Eastman Kodak Co., 415 F.Supp. 129 (S.D.N.Y.1976),[3] with which I fully concur.
 
 
 20
 Judge Frankel stressed the fact that the parties had reached an agreement for their mutual advantage in the civil case, and that the parties had taken their respective positions throughout the litigation relying on the assumption that strangers would not have access to the discovery. He further stated:
 
 
 21
 It is also unnecessary, and much too late, to wonder what different views the parties might have taken of discovery questions along the way had they contemplated delivery of their papers to public officials. * * * The supervening idea of disclosure to the Government must be judged (and burdened) by the understanding that this was never a proposed or expressly anticipated step when the papers were turned over to GAF in the first place. (415 F.Supp. at 131-132.)
 
 
 22
 In the instant appeal the protective order "expressly anticipated" the arrival of Government investigators on the scene and sought to prevent their access to the products of discovery.
 
 
 23
 The Government has broad investigative authority, including the power to subpoena persons and documents before the Grand Jury. I am not inclined to increase these powers by a balancing process or otherwise, and I concur in the position that the Government is "an adversary litigant, confined in its powers." 415 F.Supp. at 133. Further, I am convinced that the Government's purpose is not merely to obtain the answers as given by the various witnesses, but to take advantage of the work product of the lawyers who have asked innumerable Questions during the course of taking the numerous depositions involved in this case. In a case of this nature, involving a large number of experienced and able lawyers, there is much to be found in the questions propounded by the various lawyers. These questions are based on information obtained in earlier investigations and depositions, and they give hints as to further possible investigations, interpretations, and so on.
 
 
 24
 This is particularly true with reference to the deposition of Hendrix, who is now willing to hand over his deposition to the Government. Hendrix's deposition was taken on February 24, 1977. His was the last of the depositions taken in the derivative action sought by the Government. It is very probable that many of the matters taken up in the earlier depositions are referred to in his deposition, and the fact that he has agreed to turn it over to the Government would seem to be an additional reason for not acceding to the Government's request. If the agreement and the order are to be honored, his deposition should be withheld just as in the case of the others. So long as the protective order was appropriate in the beginning of the civil case, a contention not challenged here, it remains in full force despite one man's willingness to turn over his deposition.
 
 
 25
 For these reasons I conclude that none of the depositions should be turned over and vote to affirm Judge Conner's order in all respects.
 
 
 
 [1]
 The transcripts requested were those of Messrs. Dunleavy, Brittenham, Westfall, Duma, Pfann, Hamilton, Schmitt, Gerrity, Berrellez, Geneen and Hendrix
 
 
 [2]
 See also Peckham v. Casalduc, 261 F.2d 120 (1st Cir. 1958)
 
 
 [3]
 In Spangler v. Pasadena City Bd. of Education, 552 F.2d 1326 (9th Cir. 1977), the court did say that even though "a court has for some reason permitted persons who are not parties to a suit to participate in some stage of the proceedings, this will rarely, if ever, suffice to eliminate the necessity of formal intervention for these persons to become parties in their own right," 552 F.2d at 1329, and vacated the judgment of the district court, rendered upon a motion for modification of a final order in a school desegregation case after an evidentiary hearing had been held and extensive findings of fact made, remanding the case for a determination of whether the movants, not parties to the original action, should be granted leave to intervene. However, in light of the unusual circumstances present in Spangler, in particular the absence of the original plaintiffs in the hearing of the motion, we do not interpret it as a rejection of the waiver doctrine applied by us here
 In Peckham, supra, the court held that a litigant who was neither a shareholder nor creditor of a bankrupt corporation could not appeal from an order approving a reorganization plan when he had never formally become a party to the bankruptcy proceeding, even though the master had recommended that he be granted leave to intervene and the district court had allowed him to be heard and to participate in the proceedings. However, since the applicability of the waiver doctrine depends upon the circumstances of the particular case, Peckham is not necessarily inconsistent with our decision. Waiver might not be appropriate in a bankruptcy proceeding (as distinguished from the present case) because it usually involves a large number of participants and an effort to work out an arrangement designed to accommodate numerous conflicting interests. In such a case relaxation of intervention procedure could lead to chaos.
 
 
 [4]
 This contention may have been abandoned by the Government. In its original brief (pp. 11-12) the Government argued that, even assuming the depositions were given in reliance on the protective order, the Fifth Amendment would not preclude prosecution for giving perjured deposition testimony, thus implying that the Government wanted the deposition transcripts to determine whether they were perjurious. In its Reply Brief, however, the Government states that its " 'need' or motive in seeking the transcripts is not to discover and prosecute for any false statements contained therein" (p. 5)
 
 
 [5]
 In this case the Government, by discharging the grand jury investigating the matters in connection with which the Government sought the witnesses' deposition transcripts, apparently chose not to use grand jury investigative processes to obtain their testimony
 
 
 [6]
 Where antitrust violations are suspected, as in GAF, the Government also has available the civil investigative demand, 15 U.S.C. §§ 1312-14, a discovery instrument not generally available for other types of investigations. Judge Frankel mentioned the civil investigative demand in referring to the Government's awesome investigatory powers. 415 F.Supp. at 132; see also Zenith Radio Corp. v. Matsushita Electric Industrial Co., 1978-1 Trade Cases (CCH) P 62,019 (E.D.Pa.1978). We do not think, however, that the unavailability of discovery devices above and beyond the Government's armory of conventional weapons should allow the Government to exploit private discovery conducted by others pursuant to a protective order
 The Government also suggests that GAF and Zenith are distinguishable on the ground that the denial of the Government's efforts to obtain the private discovery in those cases did not necessarily preclude it from obtaining access to the material, since it could have achieved the same result through other statutory discovery powers. However, we are not called upon in the present case to decide whether the Government might be entitled to enforcement of a subpoena compelling production of the depositions. Moreover, although the Government, in GAF and Zenith, may have been seeking merely to short circuit statutory procedure in the interest of saving time and money, here it would be, under its own argument, creating a discovery power it does not presently possess.
 
 
 [7]
 In his separate opinion Judge Medina favors strict enforcement of a confidentiality agreement against the Government regardless of the possible presence in some cases of a strong overriding public need for the protected deposition testimony for law enforcement purposes. Although no such circumstances exist here, it is not difficult to visualize cases where unbalanced enforcement would thwart the public interest. For instance, such a policy would preclude the Government from obtaining essential deposition testimony even if all participants had died or had been granted immunity pursuant to Title 18 U.S.C. § 6002, and even if it could be shown that the protective order had been improvidently granted by the court
 
 
 [8]
 Our decision in this case is consistent with United States v. GAF Corporation, 596 F.2d 10 (2d Cir., 1979), which recongnizes, as do we, that in an appropriate case the district court may, upon a proper showing in the exercise of its discretion, grant an application by the Government pursuant to its Statutory enforcement power (antitrust civil investigative demand) for modification of a protective order entered in civil litigation between others to permit inspection of documents covered by the order. The reliance of a private party upon protection of pre-existing documents from disclosure to the Government would normally be more difficult to justify than that of a witness who would, absent the protective order, have invoked his privilege and given no testimony at all
 
 
 [1]
 The protective order stated in relevant part:
 It is hereby stipulated and agreed by the attorneys for the plaintiff, for the individual defendants served in this action, and for the defendant International Telephone and Telegraph Corporation ("ITT"), representing their respective clients, as follows:
 
 
 [1]
 The parties, their counsel, their agents, employees or representatives, will not utilize any documents, books, records, writings, depositions and transcripts produced by the defendants in the course of discovery in this action for any purpose other than the preparation and conduct of the litigation of this action
 
 
 [2]
 Any documents, books, records, or other materials furnished by the defendants during the course of discovery in this case relating to the allegations of the complaint concerning ITT's actions in or concerning Chile (Pars. 23-31) shall be delivered or made available to the parties and their counsel in this action only and shall be used by them solely for the purpose of prosecution or defense of the above-captioned action. Any summaries or notes prepared by counsel during discovery proceedings, or the subject of which is material produced during discovery, shall be furnished to the parties and their counsel in the case only
 
 
 [3]
 The examination of witnesses on deposition shall be held with no one present except the reporter, the witness, parties and counsel for parties or the witness
 
 
 [5]
 In the event plaintiff, her counsel, agents or representatives, are served with or receive subpoenas or written demands for production of any of the documents affected by this order from any federal or state law enforcement or regulatory agency or authority, prior to responding thereto counsel for plaintiff will serve notice of receipt of same on counsel for defendants who shall have ten (10) days following such service to move the Court for a ruling respecting the necessity of compliance therewith
 
 
 [2]
 By letter of February 16, 1978, counsel for plaintiff informed Judge Conner that he concurred with the Government's position that the depositions should be turned over. He stated that in his view the purpose of the protective order had been to protect ITT from adverse publicity while the civil action was in progress, and not to "insulate any deponent or witness from a proper law enforcement investigation. . . ." This letter does not suggest that the depositions of party and non-party witnesses were to be treated differently under the protective order
 
 
 [3]
 See also Zenith Radio Corp. v. Matsushita Electric Industrial Co., 1978-1 Trade Cases (CCH) P 62,019 (E.D.Pa.1978); In re Coordinated Pre-trial Proceedings in Western Liquid Asphalt Cases, 18 F.R.Serv.2d 1251 (N.D.Calif.1974); Data Digests, Inc. v. Standard & Poors, Corp., 57 F.R.D. 42, 44 (S.D.N.Y.1972). Compare In re Adele Halkin, Civ. No. 77-1313, --- U.S.App.D.C. ----, --- F.2d ---- (D.C. Cir. Jan. 19, 1979)