**GRUMMAN AEROSPACE CORPORATION,**
**Plaintiff,**

v.

**TITANIUM METALS CORPORATION OF AMERICA, et al., Defendants.**

No. 80 C 2809.

United States District Court, E. D. New York.

July 31, 1981.

Cahill, Gordon & Reindel by Dudley B. Tenney, New York City, for plaintiff.

Charles F. C. Ruff, U. S. Atty. for the Dist. of Columbia by Judith Bartnoff, Sp. Asst. U. S. Atty., Washington, D. C., for objectant Dept. of Defense.

Arent, Fox, Kintner, Plotkin & Kahn by Marc L. Fleischaker, Washington, D. C., for objectant Robert R. Nathan Associates, Inc.

Buchanan, Ingersoll, Rodewald, Kyle & Buerger by Ralph N. Albright, Jr., Pittsburgh, Pa., for defendant Titanium Metals Corp. of America, Inc.

White & Case by Haliburton Fales 2d, New York City, for defendants RMI Co. and U. S. Steel Corp.

Breed, Abbott & Morgan by Robert A. Bicks, New York City, for defendants RMI Co. and Nat. Distillers and Chemical Corp.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Plaintiff ("Grumman"), in this treble damage action arising out of alleged price fixing in the titanium industry, seeks enforcement of subpoenas duces tecum it served to obtain discovery of a report and other documents from nonparties. The latter are the United States Department of Defense ("DOD") and Robert R. Nathan Associates, Inc. ("Nathan"), a consulting firm engaged by DOD to prepare the sought-after report.[1] DOD and Nathan resist production with the support of defendants Titanium Metals Corporation of America ("TMCA") and RMI Company. A brief statement of background facts will suffice to explain the controversy over production of the report.

Grumman manufactures airframes many of which are used in military aircraft it sells to DOD. RMI and TMCA produce various titanium mill products which are used in the manufacture of airframes and other aircraft products. RMI and others pleaded *nolo contendere* to a 1978 government price-fixing indictment for antitrust activities in the period 1970–1976, and also consented to injunctive relief in a companion civil action.

Sometime prior to the grand jury investigation and indictment, RMI and TMCA sought to defuse their customers' potential disputes by instituting a settlement program. To facilitate acceptance within the aircraft industry, the program recognized that titanium mill products are often purchased, processed and resold, in turn, throughout various tiers of distribution before eventual end product sale. Hence, the program provided that portions of settlement amounts allocated to direct purchasers would be passed through to indirect purchasers. While many RMI and TMCA customers accepted settlement, some difficulty was experienced in obtaining the participation of all the airframe manufacturers, the so-called Tier IV companies, who had passed on to DOD the increased cost of their products attributable to the alleged price-fixing and risked liability to the government if they accepted settlement moneys. Others, like Grumman, declined to settle from dissatisfaction with the amount offered.

To avert derailment of the settlement program, RMI and TMCA proposed to DOD and any Tier IV company wishing to participate, that RMI or TMCA would assume certain of the Tier IV company's liabilities towards DOD while the Tier IV company's claims against RMI and TMCA would be settled. Thus, it was contemplated that settlement between RMI and Rockwell International, for example, would entail settlement of DOD's claims against Rockwell, as well as any claims DOD purported to assert against the titanium producers based directly or indirectly on the antitrust laws.

While DOD was apparently willing to consent to such an arrangement, it needed to know the extent of its damages arising from the alleged price-fixing. Accordingly, it contracted with Nathan—as "a neutral fact-finder from outside the government"— to produce an economic analysis of the impact upon DOD of price-fixing in the titani-

---

1. Grumman's motion and the objections of DOD and Nathan were originally filed in the United States District Court for the District of Columbia. In view of the pendency of this action, that Court transferred the motions to this district for determination.

um industry. RMI and TMCA agreed to facilitate the study by submitting privileged and confidential business documents and information to Nathan. These submissions were subject to a series of confidentiality agreements among Nathan, DOD, RMI and TMCA, which provided that DOD would have no access to the raw data but was entitled to receive only a copy of the report, as were RMI and TMCA. The agreements expressly provided that DOD "will not in any way make use of the Opinion or its contents in any litigation which might arise between the Department" and RMI or TMCA. Pursuant to these agreements, the companies provided information to Nathan, Nathan produced a draft report, and copies were sent to DOD, RMI and TMCA. RMI and TMCA counsel drafted comments on the report and returned both report and comments to Nathan.

The objectants advance two principal grounds to keep the Nathan report and other materials[2] from disclosure: (1) the parties are barred from providing the requested discovery by the confidentiality agreements; and (2) the report is attorney's work product and thus not subject to discovery absent a showing of substantial need. It is also urged that disclosure would contravene the strong judicial policy favoring settlement; that Nathan's work (and its employees) are protected from discovery pursuant to Rule 26(b)(4); and that the report and accompanying materials are immune from discovery under the Trade Secrets Act, 18 U.S.C. § 1905.

■ By themselves, the confidentiality agreements entered into by Nathan, DOD, RMI and TMCA do not immunize the Nathan report or other materials from discovery. The principal cases relied on by objectants to support this contention, e. g., *Martindell v. International Telephone &*

Telegraph Corp., 594 F.2d 291 (2d Cir. 1979), and *GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129 (S.D.N.Y.1976), involve significantly different circumstances.

In *Martindell* the district court denied the government access to deposition transcripts of witnesses who had testified pursuant to a stipulation of confidentiality "so ordered" by the court under Rule 26(c), the request having been made after the case had been settled. In affirming that denial, the Court of Appeals very plainly rested its decision on the "vital function" the protective order had played in the original litigation, "to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R. Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant." 594 F.2d at 295. The court commented that "[u]nless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation." *Id.*

In *GAF Corp. v. Eastman Kodak Co., supra*, Judge Frankel denied disclosure of documents to the Antitrust Division. His reason for doing so, however, was not the existence of an agreed order of confidentiality, but rather the agreement of the parties "through discussions among counsel, that all documents produced in discovery, whether or not confidential, were to be used 'solely for the purpose of [the] litigation.'" 415 F.Supp. at 130. But this cannot help objectants here since such an understanding was plainly tantamount to a stipulated Rule 26(c) protective order entered in the course of litigation. See *id.*, 415 F.Supp. at 131–32. In short, *Martindell* and *GAF Corp. v. Eastman Kodak* cannot fairly be extended beyond their litigation contexts to permit parties to contract privately for the confidentiality of documents, and foreclose oth-

---

**2.** More specifically, the subpoena to Nathan sought

"all books, records, documents and correspondence regarding any report commissioned by the Department of Defense . . . and prepared by Nathan, regarding prices or price-fixing practices in the titanium industry."

This would embrace the report itself, comments on the report submitted by TMCA and RMI, other original materials submitted by them, and materials prepared by Nathan but not submitted to DOD.

ers from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position.[3] To hold otherwise would clearly not serve the truth-seeking function of discovery in federal litigation.

Turning next to the closer question whether the Nathan report is protected by the immunity from discovery accorded attorney's work product, we conclude that it is not.

Grumman argues that the Nathan report is not entitled to work product protection because (1) it was not prepared in an adversarial context, but by Nathan, as a "neutral fact-finder"; (2) DOD could never use the report for litigation purposes against RMI or TMCA, but only for settlement, while nothing restricted those defendants from using the report as they wished; and (3) the report was disclosed to RMI and TMCA, who were DOD's acknowledged "adversaries."

To uphold their claim, objectants urge that the customary immunity for materials prepared "with an eye to litigation," *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947), embraces documents prepared in efforts to settle claims in order to forestall litigation. DOD, asserting that litigation "was (and is) a very real contingency" (DOD Memorandum at 5), contends also that the disclosure of the report to RMI and TMCA did not constitute a waiver because it occurred during the course of settlement negotiations; and further, because DOD, RMI and TMCA possess a "community of interest" in the report as an effort to achieve a reasonable and equitable settlement.

The work product doctrine unquestionably provides special protection against disclosure of an attorney's mental impressions, opinions or legal theories concerning specific litigation. See *Hickman v. Taylor*, 329 U.S. at 512–13, 67 S.Ct. at 394; *In re Murphy*, 560 F.2d 326 (8th Cir. 1977); Rule 26(b)(3), F.R.Civ.P. More broadly, however, it also prohibits discovery of other "information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen," *Hickman v. Taylor, supra,* 329 U.S. at 497, 67 S.Ct. at 387, see *id.* at 511, 67 S.Ct. at 393, except on a showing of substantial need and undue hardship, see Rule 26(b)(3). In addition, in view of "the realities of litigation in our adversary system ... [i]t is ... necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself." *United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) (footnote omitted). See, *e. g., Exxon Corp. v. Federal Trade Commission*, 1980–81 Trade Cases ¶ 63,577 (CCH) (D.C.Cir. 1980) (protecting as work product, hired economists' "in depth evaluation of aspects of the theory of the case and the evidence supporting these aspects, discussions of possible future litigation, and areas of possible inquiry for further economic analysis"), *but cf.* Advisory Committee Note to Proposed Amendments [1970] to Federal Rules of Civil Procedure Relating to Discovery, 48 F.R.D. 487, 504–05 ("new provisions" of Rule 26(b)(4) relating to experts "reject as ill-considered the decisions which have sought to bring expert information within the work product doctrine").

■ It bears emphasis, however, that the work product doctrine derives from the notion that "a common law trial is and always should be an adversary proceeding." *Hickman v. Taylor*, 329 U.S. at 516, 67 S.Ct. at 396 (Jackson, J. concurring). That is, the doctrine *"rests on the belief that such promotion of adversary preparation ultimately furthers the truth finding process." United States v. American Telephone & Telegraph Co.*, 30 F.R.Serv.2d 503, 519 (D.C.Cir. 1980) (emphasis in original). Consistent with this policy, and as suggested by the opening sentence of *Hickman* itself, 329 U.S. at 497,

---

**3.** *Aluminum Company of America v. United States*, 444 F.Supp. 1342 (D.D.C.1978), also relied on by DOD, involved business documents produced in response to an Antitrust Division civil investigative demand. The authorizing statute, however, expressly prohibited disclosure without the consent of the CID's recipient. The decision plainly does not aid DOD.

67 S.Ct. at 387, courts not infrequently have extended work product protection to material prepared because of the prospect of litigation.

> "The fact that litigation may still be a contingency at the time the document is prepared has not been held to render the privilege inapplicable, if the prospect of litigation is identifiable because of specific claims that have already arisen. *Sylgab Steel and Wire Corp. v. Imoco-Gateway Corp.*, 62 F.R.D. 454 (N.D.Ill.1974); *Stix Products Inc. v. United Merchants & Manufacturers, Inc.*, 47 F.R.D. 334 (S.D. N.Y.1969). The test to be applied is whether, in light of the nature of the documents and the factual situation in [the] particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. 8 Wright & Miller, Federal Practice and Procedure § 202[4 at 198]."

*Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 151 (D.Del.1977). See, *e. g., Home Insurance Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101 (N.D.Ga.1977) (surety's "itemization of potential costs of litigation"); *American Optical Corp. v. Medtronic, Inc.*, 56 F.R.D. 426, 431 (D.Mass.1972) (memoranda appraising validity of plaintiff's patent to assist defendant to evaluate whether to "risk litigation or accept a license"); see also *Vilastor-Kent Theatre Corp. v. Brandt*, 19 F.R.D. 522 (S.D.N.Y.1956).

■ Work product protection, however, may be waived by disclosure. Although there appears to be no *per se* waiver rule, if the disclosure of work product "substantially increases the possibility that an opposing party could obtain the information," the work product loses its immunity. *GAF Corp. v. Eastman Kodak Co.*, 85 F.R.D. 46, 51–52 (S.D.N.Y.1979), citing 8 Wright & Miller, *supra*, § 2024 at 210.

■ With these principles in mind, we now consider whether the Nathan report was prepared with such "an eye toward litigation" that it should be found immune from discovery. First, the very fact of settlement ordinarily presupposes the existence, and assertion of identifiable claims that adversary parties prefer to settle rather than litigate. Moreover, presentation of one's position in settlement negotiation requires not a little of the "adversary preparation" the doctrine protects. *Cf. American Optical Corp. v. Medtronic, Inc., supra*, 56 F.R.D. at 431. Here, the record does not contradict DOD's assertion that "litigation was (and is) a very real contingency." Nevertheless, there are indications that settlement discussions between DOD and the titanium producers came about primarily because of claims DOD contemplated asserting against any Tier IV company that settled with the producers. Indeed, the bulk of any claims DOD might assert against the producers might have difficulty in litigation in view of the restriction of antitrust relief to direct purchasers under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977).

The nature of the Nathan report, and the circumstances under which it was prepared, however, appear far more important to a resolution of this discovery controversy than the uncertain prospect of litigation against the producers. Nathan was retained as a "neutral fact-finder" to assess the effect upon DOD of price-fixing throughout the titanium industry. The report it produced unquestionably stands far from the core concerns of the work product doctrine. Unlike the economists' report protected in *Exxon v. FTC, supra*, Nathan's work for DOD was not intended to be an "in-depth evaluation of aspects of the theory of the case and the evidence supporting these aspects." Neither is it like the "database" materials the court protected in *United States v. ATT, supra*. Those documents described the structure of a computerized database and explained how to enter and retrieve information. They were entitled to protection because through them the defendant might "determine which documents a plaintiff's counsel would consider important, why counsel might consider them to be important, and what portions of those documents counsel might think are most important for the issues in [the] suit." 30 F.R.Serv.2d at 507. In contrast, the Na-

than report is a study of objective economic facts, drawn from the files of self-acknowledged antitrust violators against whom the report may not be used by DOD.

The critical factor here is that the confidentiality agreement bars DOD from ever using the report in litigation against RMI or TMCA. This circumstance separates the present case from those relied on by objectants. Even though the materials in those cases were prepared for settlement purposes ·or to decide whether to litigate, no restriction barred later use of the subject matter if litigation ensued. The proposition objectants seek to uphold thus becomes, in effect, whether documents prepared for use in settlement alone, without prospect for use in litigation, deserve protection from discovery. In the unique circumstances of this case, we hold that they do not, because they were not prepared in an adversary context. Indeed, the very community of interest in settlement which objectants argue precludes a finding of waiver, see *infra*, underscores how far from an adversarial context this report was prepared. The report was intended to be the common foundation for settlement of the claims of three sets of adversaries, the titanium producers, the Tier IV companies and DOD. It did not embody an adversary's competing view of the effects of asserted antitrust violations.

■ Moreover, even apart from any uncertainty whether the report may be considered work product, the disclosure to RMI and TMCA constituted a waiver of work product protection. The agreements under which the report was produced contemplated that RMI and TMCA were DOD's potential adversaries. Disclosure to an adversary waives the work product protection as to

items actually disclosed, even where disclosure occurs in settlement. See *Burlington Industries, Inc. v. Exxon Corp.*, 65 F.R.D. 26, 46 (D.Del.1974). The mere fact that RMI, TMCA and DOD may have a community of interest in settling claims arising out of alleged price fixing in the industry is insufficient to neutralize the fact of disclosure, since this interest is not different in kind from that existing between any adversaries attempting to settle.

The remaining grounds for denying discovery are equally unavailing. By its terms, Rule 26(b)(4) concerns discovery from experts retained by the parties to the litigation in which the discovery request is made. DOD is not a party to the present action. Furthermore, there is no "expert's privilege" which shelters Nathan from fact discovery of the nature Grumman seeks. See *Kaufman v. Edelstein*, 539 F.2d 811, 821 (2d Cir. 1976).[4]

■ By itself the commendable desire of RMI, TMCA and DOD to achieve settlement would not immunize documents exchanged in the course of negotiating that settlement. See *County of Madison, New York v. Department of Justice*, 641 F.2d 1036 at 1039–1041 (1st Cir. 1981) (FOIA); *North Dakota v. Andrus*, 581 F.2d 177, 181 n.7 (8th Cir. 1978) (same); see also *Burlington Industries v. Exxon Corp., supra*. Nor does the Trade Secrets Act, 18 U.S.C. § 1905, provide any basis for preventing disclosure. Disclosure pursuant to the discovery rules is disclosure "authorized by law," which the terms of the Act permit. See *Exchange National Bank of Chicago v. Abramson*, 295 F.Supp. 87, 92 (D.Minn. 1967), *appeal dismissed*, 407 F.2d 865 (8th Cir. 1968) (*per curiam*).[5]

---

4. While Nathan has requested that the Court order Grumman to reimburse it for fees and expenses incurred in responding to these discovery demands, we note that Grumman has undertaken to pay Nathan fees for such time as a witness for Nathan spends in deposition in this matter, at the hourly rate specified in DOD's contract with Nathan. In this circumstance it is unnecessary to determine if Nathan is entitled to the order it seeks.

5. One argument not advanced by DOD or Nathan is RMI's contention that Grumman is estopped from seeking discovery because Grumman at an early settlement meeting allegedly indicated approval of the plan to have an economist's report made for DOD from the producers' documents. While Grumman presses its view that RMI lacks standing to contest these non-party subpoenas, see 9 Wright and Miller, Federal Practice and Procedure, § 2457 at 431; *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979), we agree on the merits that RMI has not

Accordingly, plaintiff's motions to enforce its subpoenas directed to DOD and Nathan are granted and the motions to quash and for protective orders are denied.

SO ORDERED.

The Clerk of the Court is directed to forward a copy of this memorandum and order to counsel for the parties.

made the showing required by *Special Event Entertainment v. Rockefeller Center, Inc.*, 458 F.Supp. 72, 76 (S.D.N.Y.1978), the authority on which RMI relies.