**Alexander VALENTIN, By and Through his mother and next friend, Julia VALENTIN**

v.

**Thomas RICHARDSON, etc., et al.**

**Civ. A. No. 83–2753–W.**

United States District Court, D. Massachusetts.

June 18, 1986.

Memorandum and Final Order July 11, 1986.

Michael Avery, Howard Friedman, Avery & Friedman, Boston, Mass., for plaintiffs.

Frank J. McGee, Marshfield, Mass., Harvey Peters, John M. Moseardelli, Boston, Mass., for Thomas Richardson.

Robert Glass, Glass & Brand, Boston, Mass., for defendant City of Boston.

## MEMORANDUM ON PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO THE DEPOSITION OF FRANK VALENTIN (# 92)

ROBERT B. COLLINGS, United States Magistrate.

Alexander Valentin has sued Boston Police Officer Thomas Richardson and the City of Boston pursuant to 42 U.S.C. § 1983 alleging that Officer Richardson violated the plaintiff's constitutional rights when he unjustifiably shot the plaintiff with his service revolver on August 20, 1983. According to the Amended Complaint (# 11), on that date Officer Richardson arrived at the vicinity of 108 Williams Street in Jamaica Plain in order to investigate a complaint of excessive noise. One Robert Lombardi was arrested and taken from the premises at 108 Williams Street. The plaintiff, at the time Lombardi was being removed, was standing on the roof of a nearby stable observing the events taking place. It is alleged that the plaintiff did not engage in any unlawful activity or engage in any assaultive behavior toward Officer Richardson. Officer Richardson drew his service revolver and fired at the plaintiff, striking him in the head and causing permanent injury. It is further alleged that Officer Richardson then drew up Delinquent Child Complaints against the plaintiff, falsely accusing him of assault with a dangerous weapon and two charges of assault and battery with a dangerous weapon.

At the time of the shooting, the plaintiff's brother, Frank Valentin, was also on the roof of the stable. The defendant City of Boston has noticed Frank Valentin's deposition, and the plaintiff has moved for a protective order, pursuant to Rule 26(c), F.R.Civ.P. The factual basis for the requested order, as stated in Plaintiff's Memorandum, Etc. (# 97), is as follows:

Immediately before the shooting [on August 20, 1983] someone threw bricks in the direction of defendant Richardson from the roof of a stable, and there is evidence that the plaintiff's brother, Frank Valentin, was the person throwing the bricks. The plaintiff was also on the roof at the time he was shot.

At the plaintiff's trial on criminal charges arising from this incident, Frank Valentin was not called as a witness because his attorney indicated that he would refuse to testify based on a Fifth Amendment privilege.

\*     \*     \*     \*     \*     \*

Frank Valentin has not been prosecuted in connection with the brick-throwing incident, and discovery documents indicate that police officials made a conscious decision not to prosecute him despite having information that he was throwing bricks at defendant Richardson at the time in question. One apparent purpose behind the decision was to enhance the likelihood that his testimony would be unavailable to his brother, Alexander, at the anticipated criminal and civil proceedings in this matter.

Plaintiff's counsel represents that unless the requested protective order is entered, Frank Valentin will most likely refuse to answer questions at his deposition on the basis of his Fifth Amendment privilege against self-incrimination, and, thus, "... the plaintiff will be denied access to deposition testimony from a critical witness to the events in question." Plaintiff's Motion, Etc. (# 92).

The protective order which plaintiff seeks (1) would restrict attendance at the deposition to Frank Valentin, his attorney, the attorneys of record in the case, and the stenographer, (2) would provide for the sealing of the transcript of the deposition, (3) would provide that the transcript could not be unsealed except "for purposes of this litigation *and* only pursuant to a court order" (emphasis supplied), and (4) would provide that the contents of the deposition could be disclosed "to non-party witnesses only if counsel deems disclosure necessary for trial preparation purposes". Lastly, the proposed protective order contains clauses which read:

It shall be a violation of this order for any person to whom disclosure is made or who otherwise learns of the content of Frank Valentin's deposition to disclose to anyone else this information unless the disclosure is necessary for trial preparation *and* unless the disclosure is authorized by this order.

\* \* \* \* \* \*

The contents of the deposition and the transcript shall not be disclosed to any law enforcement officials, persons associated with any district attorney's office, or officers, other than individual named defendants...

The parties shall have the right to seek relief from this order in the event that it restricts a party's ability to prepare adequately for trial.

Plaintiff's Motion, Etc. (# 92) at p. 3–5. (Emphasis in original).

The defendant City of Boston does not object to the entry of the protective order but represents that "... counsel for the City in this civil action could in no way bind the District Attorney or any other prosecutorial authorities, including the police, in their capacity as law enforcement officers." Memorandum of City of Boston, Etc. (# 96). The defendant Richardson opposes the entry of the protective order unless the terms of the order would bar use of the deposition at trial unless Frank Valentin appeared at the trial and gave live testimony. The defendant Richardson

fears that under the shield of the protective order, "... there is a substantial risk that Frank [Valentin] will testify at his deposition in a fashion that may be less than candid." Memorandum Of The Defendant Thomas Richardson, Etc. (# 95).

There is no question but that Rule 26(c), F.R.Civ.P., grants the Court the authority to issue the protective order which is sought and to enforce the order against attempts by law enforcement authorities to modify it at a later time in order to gain access to the testimony which was given pursuant to it. This is the plain holding of *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291, 295–96 (2 Cir., 1979). In that case, the Government sought access to twelve pre-trial depositions which had been taken pursuant to a protective order which provided that the depositions would be kept confidential and "... were to be made available only to the parties and their counsel and not to be used for any purpose other than the preparation for and the conduct of the litigation." *Id.* at 293. The District Judge denied the Government's request, "... holding that the deposition testimony had been given in reliance upon the protective order, thus rendering unnecessary invocation by the witnesses of their Fifth Amendment rights, that the requested turnover would raise constitutional issues, and that principles of fairness mandated enforcement of the protective order." *Id.*

The Court of Appeals affirmed, rejecting the Government's argument that the witnesses had waived their Fifth Amendment rights by testifying and that, in any event, the Government was entitled to the transcripts to determine if the witnesses testified perjuriously. The Court wrote:

These arguments ignore a more significant counterbalancing factor—the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., which is to "secure the just, speedy, and inexpensive determination" of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant. This objective repre-

sents the cornerstone of our administration of civil justice. Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences. In short, witnesses might be expected frequently to refuse to testify pursuant to protective orders if their testimony were to be made available to the Government for criminal investigatory purposes in disregard of those orders. *Id.* at 295–96.

The witnesses' reliance on the protective order was of prime importance in affirming the District Court's decision not to modify the protective order so as to allow disclosure to the Government. This has been a major factor in another relevant case cited by the plaintiff, i.e. *H.L. Hayden Co. Of New York v. Siemens Medical Systems, Inc.*, 106 F.R.D. 551, 555 (S.D.N.Y., 1985). And it was the crucial factor which the Second Circuit Court of Appeals noted to distinguish *Martindell* case in *United States v. Davis*, 702 F.2d 418, 422–23 (2 Cir., 1983). In the *Davis* case, there was an "understanding of confidentiality" which had not been reduced either to a written stipulation or a protective order. The Grand Jury issued a subpoena seeking the transcripts of depositions which were allegedly taken pursuant to the understanding. The Court enforced the Grand Jury subpoena, finding that there was no indication that the witness agreed to testify only in reliance on the understanding. *Id.* at 422.

While reliance on a protective order by a witness when giving a deposition is obviously a major factor to take into account when deciding whether or not to allow disclosure at a later time, the situation is quite different when the Court must determine whether or not to issue a protective order in the first place. Rather than considering whether or not a witness has relied on an order, the Court must determine whether or not it is in the public interest to enter an

order upon which a witness can rely that his testimony will not be made available to law enforcement authorities at a later time.

■ In making its determination, the Court must balance the public interest in insuring that all evidence which might conceivably be relevant be made available to parties in civil litigation against the public interest in having evidence of criminal activity available to law enforcement officials. In striking the balance, all the facts and circumstances of a particular case should be considered. In examining all the facts and circumstances of a case, the Court should hear the views of all who have an interest in the manner in which the Court strikes the balance. In my view, this includes the prosecuting official having jurisdiction over the criminal activity which might possibly be revealed during the course of the deposition.

There are several reasons for this conclusion. If the order is entered, the testimony given, and access to law enforcement officials denied at a later time on the grounds that the witness relied on the protective order, the Court is to some extent granting the witness more than "use" immunity, for presumably, the testimony could never be made available to law enforcement officials for the purpose of a perjury prosecution on the basis of false statements made at the deposition. *Martindell, ante,* 594 F.2d at 295. Statutorily granted "use" immunity provides that testimony given pursuant to a grant of "use" immunity can be used in a prosecution for perjury or false statement. 18 U.S.C. § 6002.

In addition, none of the parties to this case is in a position to assert the interest of the public in having evidence of criminal activity available to law enforcement officers. If the Court is balancing that interest as against other interests, it should at least provide an opportunity for an advocate of that interest to be heard.

It might well be asked why the District Attorney should be given this opportunity when he has made a conscious decision not to prosecute Frank Valentin. As noted *supra*, plaintiff's counsel avers that there is

evidence that Frank Valentin was the one throwing the bricks and despite having this information, the police made a conscious decision not to prosecute him, the "apparent" reason for the decision being to force Frank Valentin to invoke his privilege against self-incrimination and not give evidence on behalf of his brother in the criminal proceedings against his brother and in the instant civil litigation.

While not in any way attempting to impugn the good-faith of plaintiff's counsel in making these representations, I do believe that the District Attorney should at least have the opportunity, if he wishes, to be heard on the issue before the Court makes a decision based, in part, upon these representations on the question of whether or not to issue the requested protective order.

The next matter which the Court must consider are the concerns expressed by counsel for the defendant Richardson with respect to the use which may be made of the deposition at trial. The form of protective order submitting by the plaintiff seems to indicate that the Court can unseal the deposition ". . . as necessary for this litigation and only pursuant to a court order." The Court would have discretion to unseal the deposition for purposes of its use at trial as substantive evidence if one of the preconditions listed in Rule 32(a)(3) is met or for impeachment purposes if Frank Valentin does testify at trial.

If this is the case, Frank Valentin's deposition could be unsealed and read at a public trial of this case, and nothing in the protective order would prohibit law enforcement authorities from using the testimony in a prosecution of Frank Valentin if the statute of limitations had not run.

■ Thus, I do not believe that it is necessary to include a stipulation in the protective order that the deposition may not be used at trial unless Frank Valentin appears and testifies in person. Frank Valentin will know that his deposition may be unsealed and read at a public trial and that if the statute of limitations had not run at that time, that he could be prosecuted on the basis of the statements which he made at his deposition. This, in my view, is sufficient to offset any notion which Frank Valentin might have to testify less than truthfully at his deposition because of the protections afforded in a protective order which is entered pursuant to the plaintiff's motion. If the deposition is not used at trial either because the witness testifies in person or if the plaintiff chooses not to introduce the deposition, the defendant Richardson's concerns will not materialize, since he is concerned only with the potential use of the deposition at trial. In short, in the circumstances of this case, I am of the opinion that if the protective order is issued, there should not be a provision in it that the deposition not be used at trial unless Frank Valentin testifies in person.

Another reason for this conclusion is that apart from the provisions of Rule 32, F.R. Civ.P., the trial judge will have discretion to decide whether or not to admit the deposition because under the terms of the protective order proposed by plaintiff, he will have to decide whether to issue an order unsealing the deposition. The form of order provides that the deposition transcript ". . . shall not be unsealed or disclosed to anyone except as necessary for purposes of this litigation *and* only pursuant to a court order." (Emphasis added).

In sum, I rule that the Court does have the power to issue the protective order sought by the plaintiff. However, before deciding whether or not to issue such an order, the Court should afford the District Attorney for Suffolk County the opportunity to intervene in the case for the limited purpose of stating his views on the propriety of issuing the protective order. If the District Attorney does not object to the issuance of the order, or takes no position on the matter, he need not file a motion to intervene. But, in my view, he should be afforded the opportunity to be heard. Lastly, since the District Judge will have the discretion to unseal the deposition for use at trial if the other conditions of Rule 32, F.R.Civ.P., are met, the protective order does not afford the witness with an incentive to be less than candid in his deposition

and the protective order, if it is issued, will not contain a clause barring the use of the deposition at trial unless the witness appears and testifies at the trial in person.

A notice to the District Attorney of Suffolk County will issue.

MEMORANDUM AND FINAL ORDER ON PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER WITH RESPECT TO THE DEPOSITION OF FRANK VALENTIN (# 92)

Reference is made to the Memorandum On Plaintiff's Motion For A Protective Order With Respect To The Deposition Of Frank Valentin (# 92) which was issued on June 18, 1986.

After issuance of the Memorandum and after notice was sent to the District Attorney of Suffolk County, the District Attorney filed a motion, which was treated as a motion to intervene for the limited purposes of litigating Plaintiff's Motion For A Protective Order With Respect To The Deposition Of Frank Valentin. The motion was allowed, and a hearing was held on July 7, 1986 at which the Court heard the views of the District Attorney and further argument from counsel for the plaintiff and counsel for the defendant City of Boston.

After hearing, it is ORDERED that Plaintiff's Motion For A Protective Order With Respect To The Deposition Of Frank Valentin (# 92) be, and the same hereby is, ALLOWED. In sum, I find that in all the facts and circumstances of this case, the interest of the parties to the civil litigation in discovering the evidence which Frank Valentin could give in this case outweighs the interest of the District Attorney in having access to Frank Valentin's testimony for purposes of criminally prosecuting him.

I continue to be of the opinion that deciding whether or not to issue the protective order involves balancing the needs of the civil litigants for the testimony as against the public policy that the District Attorney should have access to all evidence of criminal activity. In striking the balance, all the facts and circumstances of the particular case must be examined.

One of the most important factors is whether the deposition is likely to reveal criminal activity of which the District Attorney is unaware, or, on the other hand, produce further evidence with respect to criminal activity of which the District Attorney is already aware. In the instant case, the District Attorney is and has been aware of the criminal activity which occurred on August 20, 1983 and has the power to investigate that activity and prosecute it; it is unlikely that the deposition of Frank Valentin will reveal anything more than additional evidence of criminal activity of which the District Attorney is already aware.

The facts are that shortly after the events of August 20, 1983, delinquent child complaints were filed against the plaintiff. No charges were brought against Frank Valentin. Although the reasons for the decision are in dispute, it is undisputed that the District Attorney made a decision shortly after August 20, 1983 not to file complaints against Frank Valentin, at least at that time. It is also undisputed that the District Attorney has not, to date, filed any criminal complaints against Frank Valentin on the basis of events occurring on August 20, 1983. Further, it is undisputed that the statute of limitations for any criminal acts occurring on that date is six years and that the District Attorney can bring charges against Frank Valentin based on the events of August 20, 1983 until August 20, 1989. It is undisputed that Frank Valentin would be able to invoke his Fifth Amendment privilege against self-incrimination in the face of any questioning by the District Attorney or Grand Jury respecting the events of August 20th.

In these circumstances, it is obvious that the District Attorney is in no better position if the deposition goes forward under the conditions set down in the protective order than if the protective order were not issued. If the protective order were not issued, Frank Valentin would invoke his Fifth Amendment privilege against self-incrimination at the deposition. In that

event, neither the District Attorney nor the litigants to this civil case would have the benefit of his evidence. If the protective order were to issue and Frank Valentin testified in reliance on its protections, the District Attorney would not have the benefit of Frank Valentin's evidence but the parties to the instant civil case would. I can see no basis for denying the motion for protective order on the basis of the presentation of the District Attorney, for in the circumstances of this case, the granting of the protective order puts him in no worse position with respect to instituting a prosecution of Frank Valentin than he would be in if the motion for a protective order were denied. The District Attorney can still institute a prosecution of Frank Valentin for any crimes which were committed on August 20, 1983; the District Attorney may, if he chooses, seek to secure the testimony of Frank Valentin by granting him immunity from prosecution. All the protective order accomplishes is to deny to the District Attorney any evidence of the criminal acts occurring on August 20, 1983 which is contained in the deposition of Frank Valentin in the civil case. Since Frank Valentin would assert his privilege against self-incrimination at the deposition in the civil case if the protective order were not entered, the evidence would not be available to the District Attorney if the protective order were denied.

The interest of the civil litigants in securing all possible evidence for the trial of the case is substantial. As was noted in my June 18th Memorandum, the Second Circuit Court of Appeals in the case of *Martindell v. International Telephone and Telegraph Corp.*, 594 F.2d 291 (2 Cir., 1979) spoke of "... the vital function of a protective order issued under Rule 26(c), F.R.Civ.P., which is to 'secure the just, speedy, and inexpensive determination' of civil disputes, Rule 1, F.R.Civ.P., by encouraging full disclosure of all evidence that might conceivably be relevant, [an] objective [which] represents the cornerstone of our administration of civil justice." *Id.* at 295.

In sum, the balance tilts decidedly in favor of granting the protective order. If Frank Valentin testifies after the protective order is issued, the parties in the civil case will have the benefit of his relevant evidence; the District Attorney will not have Frank Valentin's testimony whether the protective order is issued or not issued, unless the District Attorney invokes the Commonwealth's immunity statutes.

I note in passing that the Court of Appeals for the Eighth Circuit has recommended the issuance of protective orders which limit the use of answers to interrogatories to a civil case in order to preserve a person's privilege not to incriminate himself. The Court's recommendation was made in the case of *General Dynamics Corp. v. Selb Manufacturing Co.*, 481 F.2d 1204, 12–5 (8 Cir., 1973) which involved a situation in which there was a related criminal case in process at the time a person was required to answer interrogatories in a civil case. The factual setting with respect to the assertion of the privilege against self-incrimination in that case is analagous to the facts of the instant case. The Court suggested the issuance of a protective order against the disclosure of evidence given in the civil case to the persons prosecuting the criminal case in order to allow the civil case to go forward while not jeopardizing the Fifth Amendment rights of the persons named in the criminal case. The factual distinction is that in the *General Dynamics* case, the prosecution of the person who was asserting the privilege against self-incrimination had already commenced whereas no prosecution has commenced in the instant case, although the District Attorney is aware of the evidence of Frank Valentin's role in the August 20, 1983 incident. However, the policy considerations are identical. A protective order is issued to prevent disclosure of evidence given in a civil proceeding to prosecuting authorities so as to protect Fifth Amendment rights. *See also* Note, 66 Mich.L.Rev. 738, 742 (1966). Contrary to the District Attorney's assertion, such an order is not unprecedented, *D'Ippolito v. American Oil Com-*

*pany,* 272 F.Supp. 310, 312 (S.D.N.Y., 1967).

As stated in the Memorandum of June 18th, the protective order to be issued will not prevent the use of the deposition at trial, and if the deposition is read at trial, the contents of the deposition will be public and will be able to be disclosed to the District Attorney, unless the District Judge to whom this case is assigned, issues a further protective order. I shall also include a provision in the Protective Order to the effect that nothing in the order prohibits the District Judge to whom this case is assigned from ordering disclosure of the transcript of the deposition to the United States Attorney for the District of Massachusetts for the purpose of a prosecution for violations of 18 U.S.C. §§ 1621, 1622 or 1623 if the District Judge, in his discretion, believes that such disclosure is appropriate.

A Protective Order shall issue.