In re **ETHYLENE PROPYLENE DIENE MONOMER (EPDM) ANTITRUST LITIGATION.**

**This document relates to All Actions.**

**Civil Action No. 3:03md1542 (SRU).**

United States District Court,
D. Connecticut.

Jan. 26, 2009.

Brian P. Daniels, David R. Schaefer, Brenner, Saltzman & Wallman, New Haven, CT, Gregory K. Arenson, Robert N. Kaplan, Kaplan, Fox & Kilsheimer, LLP, New York, NY, Jason S. Hartley, Ross, Dixon & Bell, San Diego, CA, Joseph M. Barton, Steven O. Sidener, Charles A. Dirksen, Gold, Bennet, Cera & Sidener, Laurence D. King, Kaplan, Fox & Kilsheimer, LLP, Joseph M. Patane, Law Office of Joseph M. Patane, Julio Ramos, The Furth Firm, Mario N. Alioto, Trump, Alioto, Trump & Prescott, LLP, Joseph J. Tabacco, Jr., Berman, Devalerio, Pease, Tabacco, Burt & Pu, Susan G. Kupfer, Glancy & Binkow, San Francisco, CA, Merril Hirsh, Ross, Dixon & Bell, LLP, Kathleen Konopka, Cohen, Milstein, Sellers & Toll, Michael P. Lehmann, Hausfeld, LLP, Washington, DC, Jeffrey S. Nobel, Izard Nobel, PC, Hartford, CT, Daniel Richard Karon,

Goldman, Scarlato & Karon, PC, Cleveland, OH, Lisa J. Rodriguez, Trujillo, Rodriguez & Richards, Haddonfield, NJ, Robert S. Kitchenoff, Weinstein Kitchenoff, LLC, Anthony J. Bolognese, Joshua H. Grabar, Michael E. Gehring, Bolognese & Associates, Joel C. Meredith, Greenfogle & Skirnick, Steven J. Greenfogel, Meredith, Cohen, Greenfogel & Skirnick, P.C., Philadelphia, PA, Steven A. Kanner, William H. London, Freed, Kanner, London & Millen, LLC, Bannockburn, IL, William R. Edwards, The Edwards Law Firm, LLP, Corpus Christi, TX, Mary Jane Fait, Wolf, Haldenstein, Adler, Freeman, Herz, Chicago, IL, for Plaintiffs.

Benjamin G. Bradshaw, O'Melveny & Myers, G. Hamilton Loeb, Paul, Hastings, Janofsky & Walker, Gary A. Winters, Richard J. Favretto, Mayer Brown, LLP, Leah Brannon, Cleary, Gottlieb, Steen & Hamilton, Washington, DC, Bradford S. Babbitt, Craig A. Raabe, Robinson & Cole, Jason S. Weathers, Michael P. Shea, Day Pitney, LLP, Hartford, CT, Michael F. Tubach, O'Melveny & Myers LLP, Kevin C. McCann, Paul, Hastings, Janofsky & Walker, San Francisco, CA, Thomas J. McGarrigle, Reed Smith, LLP, Barry L. Cohen, Thorp Reed & Armstrong, LLP, Philadelphia, PA, Elizabeth J. Stewart, Murtha Cullina, LLP, New Haven, CT, Robert J. Dwyer, Boies, Schiller & Flexner, New York, NY, William J. Wenzel, Pullman & Comley, Shelley R. Sadin, Zeldes, Needle & Cooper, Bridgeport, CT, James R. Bliss, John S. McGeeney, Paul, Hastings, Janofsky & Walker, Stamford, CT, Andrew S. Marovitz, Britt M. Miller, Mayer Brown, LLP, Chicago, IL, for Defendants.

## RULING ON MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING MODIFICATION OF THE CONFIDENTIALITY ORDER

STEFAN R. UNDERHILL, District Judge.

Stone Paradise, Inc. has moved to intervene in this action under Rule 24(b) of the Federal Rules of Civil Procedure for the limited purpose of seeking modification of the Stipulation and Order Concerning Confidentiality of Documents and Materials ("Protective Order") (doc. #37) entered in this litigation. According to the terms of the Protective Order, "[a]ll documents and materials containing or which are derived from trade secrets or other confidential research, development, or commercial information of current commercial value" may be filed under seal and are available only to designated parties. Protective Order ¶ 1(a). Stone Paradise has moved to intervene and modify the Protective Order so that it may have access to the discovery materials produced by the DSM defendants in this action. Stone Paradise is the lead plaintiff in a collateral Canadian class action suit against ethylene propylene diene monomer ("EPDM") suppliers, which is currently pending in the Ontario Superior Court of Justice, *Stone Paradise Inc. v. Bayer Inc., et al.*, Court File No. 45604CP (Oct. 25, 2004). It believes the DSM materials will be relevant in pursuing its Canadian class action suit. For the reasons that follow, Stone Paradise's motion to intervene and modify the Protective Order is granted, subject to several conditions discussed below.

## I. Factual Background

This multi-district litigation is an antitrust class action suit filed on behalf of all persons who purchased EPDM synthetic rubber in the United States from the defendants between January 1994 and December 2002. Consolidated Amended Complaint ¶ 2. The plaintiff-purchasers seek damages and other relief, alleging that defendants conspired to fix, raise, maintain and/or stabilize EPDM prices in the U.S. market in violation of U.S. antitrust laws. Consolidated Amended Complaint ¶¶ 2, C–F.

Stone Paradise is the lead plaintiff in a currently pending EPDM antitrust class action lawsuit filed the Ontario Superior Court of Justice. Stone Paradise Exhibit A at 1. That complaint asserts essentially the same claim as the present underlying suit, namely that between January 1994 and December 2002 defendants conspired to artificially fix, raise, and/or maintain the price of EPDM on the Canadian market in violation of Canada's Competition Act. Stone Paradise Exhibit A at 14–15. Both cases arise out of the same nucleus of operative facts, although each case

seeks damages for the effect of the alleged multi-national price-fixing scheme on the markets of their respective countries.

At the time Stone Paradise filed its motion to intervene, discovery had yet to commence in the Canadian anti-trust litigation. Declaration of Michael Robb ¶ IV. Stone Paradise is hoping to avoid the time and expense of conducting duplicative discovery by having access granted to the materials filed in connection with this suit. Stone Paradise has agreed to abide by the terms of the Protective Order and to submit to the personal jurisdiction of this court for the purpose of enforcing the Protective Order. Declaration of Michael Robb ¶ VII.

## II. Discussion

The DSM defendants ("DSM") oppose the motion to intervene and to modify the Protective Order on the ground that Stone Paradise has not met its burden for either (1) permissive intervention under Fed.R.Civ.P. 24(b) or (2) modification of the Protective Order. DSM asserts that Stone Paradise has the ability to conduct discovery on its own in Canada and that intervening in the U.S. litigation would prejudice it by the unnecessary disclosure of sensitive and highly confidential materials. The defendants further argue that under Canadian discovery rules, many of the documents and depositions would be inadmissible and that Stone Paradise is seeking to do an "end run" around Canadian discovery rules by retrieving materials produced in the U.S. litigation. Stone Paradise counters that in similar cases, U.S. courts have granted access to the discovery materials, but allowed the Canadian courts to sort through the admissibility of the individual documents and depositions in the Canadian litigation.

■ Whether to grant intervention and whether to grant modification of a protective order are two separate issues. The decision to allow a party to intervene for the limited purpose of modifying a protective order does not automatically mean the court will grant the motion to modify the protective order. *In re Vitamins Antitrust Litig.*, 2001 WL 34088808, *2, 2001 U.S. Dist. Lexis 25068, at *27 (D.D.C.2001). Instead, a court will con-

sider first whether a party has met the threshold criteria for permissive intervention and then engage in a balancing test of the parties' interests to determine whether, in its discretion, the motion to intervene should be granted. *Id.* Only if the court determines that a party should be permitted to intervene, is the issue of modification of a protective order examined. *Id.*

### A. Rule 24(b) Permissive Intervention

■ Stone Paradise seeks to intervene in this suit for the sole purpose of obtaining a modification to the Protective Order that would permit it to access the discovery materials submitted in the case. "[P]ermissive intervention is the proper method for a non-party to seek a modification of a protective order." *AT & T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir.2005) (citing *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293–94 (2d Cir.1979)); *see also EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1045 (D.C.Cir.1998) (noting that "despite the lack of a clear fit with the literal terms of Rule 24(b), every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders") (citing cases); 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2044.1 (2d ed. 1994) ("Wright & Miller") ("Procedurally, the common manner by which these nonlitigants seek modification is to move for intervention under Rule 24(b).").

Rule 24(b)(2) states that "[o]n a timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." The decision to grant permissive intervention is "wholly discretionary with the trial court." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir.1978). Rule 24(b)(3) directs that "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." The trial court's discretion in considering motions for permissive intervention is considered "very broad" and the Second Circuit employs a clear abuse of discretion

standard of review. *Brennan*, 579 F.2d at 192.

The statutory language of Rule 24(b) requires an intervenor to demonstrate first, that the motion is timely, and second, that its claim or defense shares a common question of fact or law with the main action. Most courts add a third requirement of showing an independent ground for subject matter jurisdiction.[1] *Nat'l Children's Ctr.*, 146 F.3d at 1046. Courts have interpreted these requirements with even greater flexibility when the third-party seeks to intervene only for the purpose of gaining access to discovery materials. *In re Linerboard Antitrust Litig.*, 333 F.Supp.2d 333, 339 (E.D.Pa.2004). Even if a party meets the threshold criteria for permissive intervention, the court must still engage in a balancing test of the parties' interests and exercise its discretion in determining whether or not to grant the intervention. *Vitamins*, 2001 WL 34088808, *2, 2001 U.S. Dist. Lexis 25068, at *27.

### 1. *Timeliness*

■ The first requirement under Rule 24(b) is a timely motion to intervene. The Second Circuit takes the following circumstances into consideration when determining whether an application to intervene is timely: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *In re: Bank of New York Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir.2003) (internal quotation omitted).

■ In cases where parties have sought intervention for the limited purpose of modifying a protective order, the requirement of timeliness is quite broad. *Linerboard*, 333 F.Supp.2d at 339. Where a party seeks intervention to modify a protective order and not to participate on the merits, courts have permitted intervention even where the parties to the underlying litigation have settled their dispute. *Nat'l Children's Ctr.*, 146 F.3d at 1047 (noting a "growing consensus" among the circuit courts to allow intervention to challenge a protective order even after the case has been terminated) (internal quotation omitted); *see also The Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 157–58 (S.D.N.Y.2003) (permitting intervention to modify a protective order two years after case was closed).

In the cases most parallel to this suit—where Canadian parties involved in collateral class action lawsuits in Canada sought to intervene in U.S. antitrust suits for the limited purpose of modifying a protective order—the courts found the motion to intervene was timely where the parties to the underlying suit had not yet completed discovery and even where the U.S. suit had settled. *In re Neurontin Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL Docket No. 1629 (D.Mass. Oct. 13, 2006) (order granting motion to intervene) (discovery ongoing); *Linerboard*, 333 F.Supp.2d at 339 (case settled); *In re Baycol Prods. Litig.*, MDL No. 1431, 2003 WL 22331293 (D.Minn. May 6, 2003) (order granting in part and denying in part motion to intervene) (proceeding ongoing); *Vitamins*, 2001 WL 34088808, **3–4, 2001 U.S. Dist. Lexis 25068, at *31–32 (discovery ongoing).

The present suit remains ongoing, therefore the motion to intervene is timely. In considering the interests of the parties and the potential prejudice to the existing parties, granting access to the discovery materials in this case will not delay the progress of these proceedings for the DSM defendants. Although Stone Paradise concedes that it is seeking access to materials that it could duplicate with its own discovery requests in Canada, gaining access to the materials produced in the U.S. EPDM litigation would likely save it much time and expense in its

---

1. The Second Circuit has not adopted the exact three-part test used by the D.C. Circuit and other circuits for Rule 24(b) permissive intervention. However, it is not necessary to decide whether an independent jurisdictional basis is a necessary requirement for Rule 24(b) permissive intervention because the circuits that recognize such a requirement also recognize a narrow exception for parties seeking to intervene for the limited purpose of modifying a protective order. 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane § 1917.

Canadian litigation by avoiding duplicative discovery.

The DSM defendants argue that Stone Paradise's motion to intervene is not timely because the class has not been certified in the Canadian litigation and therefore, discovery has not commenced. In their effort to defeat the motion, the defendants rely on the Second Circuit's decision in *AT&T*, where the court declined to grant intervention to a party seeking to modify a protective order. 407 F.3d at 561. The significant factual difference between the present suit and that case, which involved a scheme to charge consumers a higher rate for collect calls, is that in *AT&T*, the intervening third-party sought access to discovery materials even though discovery in his own suit had closed over a year earlier. *Id.* Because he was seeking to circumvent the limitation on the production of further discovery in his own suit, the district court denied his motion to intervene and the Second Circuit affirmed. *Id.* at 562. By contrast, there is no limitation on discovery in the Canadian litigation that would be circumvented by modifying the protective order in this case.[2]

■ Essentially, the DSM defendants have misconstrued the inquiry of timeliness. In deciding whether to permit a party to intervene under Rule 24(b) courts do not generally consider the status of the collateral litigation. Rather, the determinative inquiry is the status of the underlying litigation and whether allowing another party to intervene is prejudicial to the existing parties. Although the defendants' concern that the addition of Stone Paradise will weaken the secrecy safeguards of the protective order by expanding access to sensitive materials is valid, that concern has no bearing when considering the issue of timeliness. Because the intervention by Stone Paradise for the limited purpose of modifying the protective order would not impose significant delay or expense on the existing parties, the motion to intervene is timely.

### 2. *Common Legal or Factual Issues*

■ A party seeking to intervene under Rule 24(b) must next show that it shares a common question of law or fact with the underlying suit. This requirement is satisfied if the movant raises a common question in a suit filed in another jurisdiction. *Nat'l Children's Ctr.*, 146 F.3d at 1047. Courts have not distinguished between U.S. and foreign jurisdictions when considering motions to intervene for the limited purpose of modifying a protective order. *Neurontin*, MDL Docket No. 1629 (D.Mass. Oct. 13, 2006) (order granting motion to intervene); *Linerboard*, 333 F.Supp.2d at 339; *Baycol*, MDL No. 1431, 2003 WL 22331293 (D.Minn. May 6, 2003) (order granting in part and denying in part motion to intervene); *Vitamins*, 2001 WL 34088808, *4, 2001 U.S. Dist. Lexis 25068, at *32–34.

■ Stone Paradise has filed a nearly identical suit in Canada raising similar factual questions about a multi-national conspiracy to fix EPDM prices in Europe and North America. The primary difference between the present suit and the Ontario suit is that the damages inquiry is focused on the effect on two different markets: the U.S. market and the Canadian market respectively. The DSM defendants argue that this difference is broad enough to mean that no common question of law or fact is raised between the two pending suits. That argument is without merit. The two suits share many similar questions of fact and law, therefore Stone Paradise has met the second threshold requirement for permissive intervention.

### 3. *Independent Basis of Jurisdiction*

■ As noted above, although many courts have held that an independent basis of jurisdiction is a third requirement for permissive intervention under Rule 24(b), those same courts recognize "a narrow exception when the third party seeks to intervene for the limited purpose of obtaining access to documents protected by a confidentiality order." *Nat'l Children's Ctr.*, 146 F.3d at 1047. The

---

**2.** It is also important to note that the Second Circuit was reviewing the district court's denial of permissive intervention with "particular[ ] deferen[ce]" in *AT&T*, 407 F.3d at 561. Because

this court is considering the motion in the first instance, it is accorded broad discretion in deciding a motion to intervene under Rule 24(b).

general concern that intervention might be used to circumvent the standard rules of subject matter jurisdiction in federal court is not an issue here because the third-party is not asking the court to exercise jurisdiction over an additional claim on the merits. Instead, the third-party is asking the court to exercise a power it undoubtedly already has—the power to modify the protective order in the underlying litigation. *Id. See also In re "Agent Orange" Prod. Liab. Litig.*, 821 F.2d 139, 145 (2d Cir.1987) ("It is undisputed that a district court retains the power to modify or lift protective orders that it has entered."). The courts that have addressed this issue in the context of a third-party seeking to intervene in order to gain access to discovery materials for use in collateral Canadian antitrust litigation have also bypassed the independent jurisdictional requirement. *See Linerboard*, 333 F.Supp.2d at 339; *Vitamins*, 2001 WL 34088808, **3–4, 2001 U.S. Dist. Lexis 25068, at *30–31.

In the present EPDM litigation, Stone Paradise seeks to modify the protective order shielding the discovery materials, not to raise a claim on the merits. It is within the power of this court to modify the protective order in the case, therefore there is no need for Stone Paradise to prove it has an independent basis of jurisdiction in the suit. Thus, Stone Paradise has met the three threshold criteria for a permissive intervention under Rule 24(b).

### 4. *Undue Delay or Prejudice*

▮ Next, the court must balance the interests of all parties to determine whether intervention would "unduly delay or prejudice the adjudication of the rights of the original parties." Fed.R.Civ.P. 24(b). Stone Paradise's interests include saving the time and expense of conducting duplicative discovery in Canada. The DSM defendants have not advanced any persuasive argument that allowing Stone Paradise to intervene will unduly delay or prejudice the adjudication of their rights. In their brief opposing the motion to intervene and to modify the protective order, the DSM defendants spend the majority of their time opposing the modification itself, while glossing over the fact that

the modification is a separate inquiry from the threshold decision to grant intervention. Because Stone Paradise has met the threshold criteria for a permissive intervention and the defendants have not shown that any undue delay or prejudice to the adjudication of their rights in the present case would result, Stone Paradise is permitted to intervene in this suit. Whether it will be permitted to modify the protective order, and to what extent, is a separate issue, discussed below.

### B. *Modification of the Protective Order*

▮ Having determined that Stone Paradise may intervene in the pending EPDM litigation, it is necessary to determine whether the Protective Order should be modified and, if so, how extensive the modification should be. Protective orders entered pursuant to Rule 26(c) are subject to modification. In the Second Circuit, where there has been reasonable reliance by a party or deponent on the confidentiality order in giving testimony or producing materials, a district court should not modify an order granted under 26(c) " 'absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.' " *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir.2001) (quoting *Martindell*, 594 F.2d at 296) (internal alteration omitted).

This presumption against modification differs from the standard in other circuits, which have a presumption in favor of access in cases where an intervening party involved in bona fide collateral litigation seeks access to protected discovery materials. *See, e.g., United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1428 (10th Cir.1990); *Wilk v. Am. Med. Ass'n*, 635 F.2d 1295, 1299 (7th Cir.1980). *See also Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 789–90 (3rd Cir. 1994) (rejecting Second Circuit approach); *Beckman Industries, Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475–76 (9th Cir.1992) (same); *Public Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 791 (1st Cir.1988) (same). In those circuits, modification is favored when it will "place private litigants in a position they would otherwise reach only after repetition

of another's discovery."[3] *Wilk*, 635 F.2d at 1299. A trial court should deny modification only where it would "tangibly prejudice substantial rights of the party opposing modification." *Id.* The desire to make litigation more burdensome to pursue in the collateral jurisdiction "is not legitimate prejudice." *United Nuclear Corp.*, 905 F.2d at 1428. Any legitimate interest the defendants have in keeping the materials filed under the protective order out of public hands can be accommodated by placing the intervening party under the same use and disclosure restrictions contained in the original order. *Id. See also Linerboard*, 333 F.Supp.2d at 339–40 (allowing modification on the condition that the Canadian third-party intervenor be bound by the protective order's use and disclosure requirements and submit to the personal jurisdiction of the court for purposes of enforcing the agreement); *Neurontin*, MDL Docket No. 1629 (D.Mass. Oct. 13, 2006) (order granting motion to intervene) (same).

The stricter *Martindell* standard is not limited to instances where the Government is seeking to modify a protective order, but is applicable to modifications sought by any third-party. *TheStreet.com*, 273 F.3d at 229 n. 7. The strong presumption encourages full disclosure of all relevant evidence and provides a "powerful incentive to deponents who would not otherwise testify." *Id.* at 229–30. Where parties have reasonably relied on these protective orders to ensure the confidentiality of their testimony and discovery documents—testimony that may not have otherwise been given or documents that may not have been produced in the absence of such an order—the Second Circuit has been hesitant to permit modifications that might "unfairly disturb the legitimate expectations" of the parties or deponents. *Id.* at 230.

▮ Although the DSM defendants would have the inquiry end there, the Second Circuit in *TheStreet.com* goes on to state that "[o]n the other hand, some protective orders may not merit a strong presumption against modification," noting that the nature of some orders "may not justify reliance by the parties." *Id.* at 230–31. Therefore, though the *Martindell* standard is admittedly a stringent one, it does not apply uniformly to *all* protective orders. *Id.* Rather, the application of the strong presumption against modification is dependent upon a protective order's particular characteristics and whether it invites reasonable reliance on the permanence of the order. *Id.* "Even the Second Circuit recognizes that there must be a plausible showing of reliance on the order to narrow the grounds for modification." 8 Wright & Miller § 2044.1. For example, where the deponent or party could not have reasonably relied on the protective order to continue indefinitely, "a court may properly permit modification of the order." *TheStreet.com*, 273 F.3d at 231. In *TheStreet.com*, the Court concluded that the *Martindell* presumption against access did not apply to the protective order at issue because the deponents, unlike in *Martindell*, had not provided their depositions in reasonable reliance on the protective order. *Id.* at 233. Absent such reliance, the *Martindell* standard "never came into play," and therefore the lower court's decision to modify the order after balancing the parties' interests was within the scope of its discretion. *Id.* at 234.

▮ Application of the *Martindell* presumption against modification depends on the nature of the protective order and whether it invited reasonable reliance by a party or deponent. An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonably relied on the protective order: (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order. Additional considerations that may influence a court's decision to grant modification include: the type of discovery materials the collateral litigant seeks and the party's purpose in seeking a modification. Given the wide variety of protective orders in

---

**3.** For purposes of clarity, I must note that the electronic version of the *Wilk* decision available on Westlaw omits the quoted language (last checked January 26, 2009). In fact, the Westlaw version has deleted all the decision's text between footnotes 7 and 8. The Lexis and bound Federal Reporter versions of this case contain the quoted language.

operation, the more flexible approach to modification emphasized by *TheStreet.com* is sensible.

### 1. *Scope*

 When considering a motion to modify, it is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason. A blanket protective order is more likely to be subject to modification than a more specific, targeted order because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition. *Compare Agent Orange,* 821 F.2d at 147–48, *with Martindell,* 594 F.2d at 296–97. "Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Public Citizen,* 858 F.2d at 790. *Stipulated* blanket orders are even less resistant to a reasonable request for modification. *Beckman,* 966 F.2d at 476.

A blanket protective order grants sweeping protection to most, if not all, discovery materials produced in a litigation, even discovery material that a party would have been required to disclose in the absence of a protective order. In large *multi-district litigations,* blanket protective orders have become standard as a way to keep discovery disputes to a minimum and the proceedings moving. Although the parties may have a legitimate interest in keeping the discovery materials out of the public hands for commercial reasons, protective orders are granted, more often than not, as an accommodation to the parties in light of those interests. Recognizing that " '[u]mbrella protective orders do serve to facilitate discovery in complex cases,' " the defendants' reliance in producing discovery material was not reasonable because " 'even without [the confidentiality order], [the court] would eventually have ordered that each discoverable item be turned over to the plaintiffs.' " *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 125–26 (2d Cir.2006) (quoting *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 101 F.R.D. 34, 43–44 (C.D.Cal.1984)). On the other hand, protective orders focused on a particular document or the testimony of a few key people are often granted after a specific request by a party and involve a more pointed inquiry by the court into the need for confidentiality.

In *Agent Orange,* the Second Circuit upheld the lower court's modification of a protective order based on its broad scope, its temporary nature, and the fact that the court did not require the parties to make a good cause showing prior granting the order. 821 F.2d at 147–48. The two protective orders granted by the district court were quite sweeping: the first allowed the parties to protect any discovery material it deemed "confidential" and the second order presumed that all material produced would be treated as confidential automatically. *Id.* The Second Circuit concluded this was "exceptionally pervasive" pretrial protection and upheld the lower court's decision to unseal the protected materials for an intervening party seeking access to the discovery documents.[4] *Id.* at 148.

**4.** Because the decision in *Agent Orange* was, in part, grounded on a now-defunct version of Federal Rule of Civil Procedure 5(d), which gave the public a presumptive right of access to all discovery, 821 F.2d at 145, its relevance has been subsequently called into question. *TheStreet.com,* 273 F.3d at 233 n. 11 (rejecting the argument that *Agent Orange* carved out an additional presumption that all discovery materials should be considered "judicial documents," thus giving the public a presumptive right of access, because the amendments to Rule 5(d), which now prohibits the filing of certain discovery, eliminated any presumption of public access to those documents). The Second Circuit in *Iridium India Telecom, Ltd. v. Motorola, Inc.,* 165 Fed.Appx. 878, 880–81 (2d Cir.2005), citing that footnote in *TheStreet.com,* noted that the language in *Agent Orange* relating to whether an order had been improvidently granted in the absence of a showing of good cause has been overruled by statute. Nevertheless, *Agent Orange* remains relevant as it pertains to the issue of reasonable reliance by the proponent of the protective order. Indeed, *TheStreet.com,* favorably quoted *Agent Orange* on the issue of reasonable reliance. 273 F.3d at 231.

By contrast, the protective order at issue in *Martindell* applied only to the transcripts of twelve deponents who agreed to testify pursuant to a confidentiality agreement, which provided that the transcripts and any documents furnished by these witnesses would be available only to the parties and their counsel. 594 F.2d at 293. The Government sought the transcripts as part of a criminal investigation to bring perjury and obstruction of justice charges against those very deponents. *Id.* The Court noted that one of the purposes of Rule 26(c) protective orders is to encourage witnesses, who might otherwise invoke their Fifth Amendment right against self-incrimination, to provide "essential testimony in civil litigation." *Id.* at 295–96. Because the deponents had relied on the confidentiality provided by the order in agreeing to testify, giving up their Fifth Amendment rights in the process, the Court affirmed the district court's refusal to modify the protective order. *Id.* at 296–97.

The Protective Order at issue here is a blanket protective order. It allows all parties to designate any material containing or "derived from trade secrets or other confidential research, development, or commercial information of current commercial value" as "confidential," thus subjecting it to the order's disclosure and use restrictions. Protective Order ¶ 1(a). Furthermore, any time a party believes such confidential material is of a "highly commercially sensitive nature" it may designate it as "highly confidential," placing it under even more restrictive disclosure and use provisions. Protective Order ¶ 1(b). Finally it dictates that all materials produced (whether or not they are designated as confidential) "shall be used for purposes of this litigation only." Protective Order ¶ 1(c). The Protective Order's expansive language granting the parties broad latitude to self-designate materials as either "confidential" or "highly confidential" more closely parallels the language of the order in *Agent Orange,* which was held to be "excessively pervasive," than the scope afforded by the *Martindell* order, which was not modified.

### 2. *Express Language*

■ Where a protective order contains express language that limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties, it is not reasonable for a party to rely on an assumption that it will never be modified. *TheStreet.com,* 273 F.3d at 231 ("For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties.") (citing *Agent Orange,* 821 F.2d at 147). In *Agent Orange,* the protective order was "applicable solely to the pretrial stages of the litigation … [and] would be reconsidered upon commencement of the trial." 821 F.2d at 147. Therefore, under those circumstances, reliance was unreasonable. *Id.* Where the court explicitly instructed the parties that they could revisit the issue of confidentiality at any point during the proceedings, there was no reasonable reliance on the protective order remaining permanent. *Allen v. City of New York,* 420 F.Supp.2d 295, 301 (S.D.N.Y.2006).

■ Express provisions of an order permitting non-parties to seek access to the protected materials will diminish the reasonableness of reliance a party claims to place on the order's permanent secrecy. Where the order "specifically contemplates that relief from the provisions of the order may be sought at any time: 'This Confidentiality Order shall not prevent anyone from applying to the Court for relief therefrom,' " the defendants could not "reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret." *Lugosch,* 435 F.3d at 126. *See also Daugerdas,* 217 F.R.D. at 160 (noting that "the parties' reliance on the confidentiality afforded by the Protective Order must have been tempered because the Order specifically provides that '[a]ny party or interested member of the public may request at any time that a "Confidential" designation be removed from any document or information' "). Courts evaluating the language of stipulated agreements between the parties must interpret the order "as its plain language dictates." *Geller v. Branic Int'l Realty Corp.,* 212 F.3d 734, 738 (2d Cir.2000) (internal alteration and quotation omitted).

The express language of the Protective Order in this case does not lend itself to reasonable reliance that it will afford permanent secrecy. First, the parties acknowledge the possibility of future modification:

> The party receiving designated Confidential Information shall treat it as proprietary information and shall not use or disclose the information except for purposes set forth in this Order *or by such orders as may be issued by the Court during the course of this litigation.*

Protective Order ¶ 1(a) (emphasis added). Next, the instruction that is to appear on all sealed documents also acknowledges the possibility of modification:

> This envelope contains documents which are filed under seal in this case by [name of party] and, by Order of this Court, dated _____, 2003, shall not be opened nor the contents displayed or revealed except as provided in that Order *or by further order of the Court.*

Protective Order ¶ 1(f) (emphasis added). The Order further contemplates the need for disclosure to non-parties, setting up specific procedures for making such disclosures and also how the opposing parties are to be informed that disclosures to non-parties have occurred:

> However, Confidential Information may be disclosed to non-parties ... pursuant to paragraph 4(b)(v) provided that such persons are provided either a copy of this Order or the summary of this Order ..., they represent that they have read and understand the provisions of this Order or its summary and they are advised by the disclosing counsel that such persons are bound by the provisions of the Order.... Upon a showing of good cause to the Court, copies of all executed Agreements shall be provided to the counsel for opposing parties within 30 days.

Protective Order ¶ 6. Non-parties can obtain access to confidential information in the event such disclosures are necessary "to assist in the preparation or conduct of this litigation." Protective Order ¶ 4(b)(v). The Order specifically applies only to pre-trial discovery, with express contemplation for further agreement on how to treat the materials at trial: "The rules governing the use of Confidential and Highly Confidential Material at trial shall be determined at a future date." Protective Order ¶ 7. Although Paragraph 15 contemplates that its provisions "shall remain binding" upon final resolution of the litigation and that the court retains jurisdiction to enforce the agreement, Paragraph 16 states that the order is binding on "all parties to this action and on all non-parties who have been served with a copy of this Order, and shall remain in force and effect *until modified, superseded, or terminated by consent of the parties or by Order of the Court.*" Protective Order ¶ 15–16 (emphasis added).

Based on the above language, it is difficult for the DSM defendants to argue that they relied on the Order to provide absolute and unchanging confidentiality of discovery materials. Because the parties expressly agreed that the Order was subject to modification by the court, it is within the court's discretion, after weighing the interests of both parties, to modify the Order to permit Stone Paradise access to the discovery materials.

3. *Level of Inquiry by Court Prior to Granting Order*

 Whether a protective order is entitled to *Martindell's* strong presumption against modification is also dependent upon the circumstances surrounding its grant, i.e., how much consideration the court gave to the request for a protective order before granting it. A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause. *See Fournier v. McCann Erickson,* 242 F.Supp.2d 318, 341 (S.D.N.Y.2003) (citing *Agent Orange,* 821 F.2d at 147–48).

 The heightened *Martindell* "extraordinary circumstances" standard applies where a court has already "considered each document in the first instance according to a 'good cause' standard" and is not appropriate in cases with stipulated protective orders that grant parties "open-ended and unilateral deference" to protect whichever discovery materials they choose. *Id.* at 342. Specifi-

cally, in *Fournier*, the protective order "not only asked the Court to defer to the parties' judgment on confidentiality but it also allowed for unilateral designation of an exhibit as protected material, and it did not list specific documents, or delineate the kinds of documents, contemplated for protection." *Id.* at 341.

■ Here the parties similarly did not make a good cause showing before the court signed the Protective Order in December 2003. Instead Judge Peter C. Dorsey granted the Order upon the parties' stipulation and agreement. In the absence of the requisite good cause showing, it cannot be presumed that every piece of discovery filed under the Order is actually worthy of such a high level of protection. *Lugosch*, 435 F.3d at 126 ("[T]he mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable."). These types of orders are certainly necessary to expedite the discovery process in large multi-district class action litigations—to require parties to make a document-by-document showing of good cause would be an inefficient use of judicial resources. *Schiller v. City of New York*, 2007 WL 136149, at * 19 (S.D.N.Y. 2007). However, to automatically apply *Martindell's* strong presumption against modification to *all* protective orders would permanently shield stipulated, all-encompassing orders from ever receiving the type of court review contemplated by Rule 26(c). *See Fournier*, 242 F.Supp.2d at 343–44 (vacating the protective order for trial in part because "the Court has never had an opportunity to consider arguments concerning each specific document" and therefore had no

basis to keep the documents sealed "indefinitely").[5] A uniform application of *Martindell* to every single protective order—regardless of its scope and the granting court's level of inquiry—cannot be reconciled with the broad discretion a district court exercises in considering requests to modify the protective orders it has granted.

Therefore, because the parties merely stipulated to a blanket order granting the parties broad discretion to place material under the Protective Order at their own designation, it is not reasonable for the DSM defendants to contend that they relied on the Order's protection to produce all discovery materials. This is particularly the case for the materials they would have been compelled to produce even in the absence of such an order.

### 4. *Nature of the Reliance*

■ Where a party or deponent, in reliance on the protective order, gives up its right to refuse to testify, or to produce documents it would not otherwise be compelled to produce, the heightened *Martindell* presumption against modification naturally applies. "The extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case." *Beckman*, 966 F.2d at 475. For example, deponents may agree to give up their Fifth Amendment right against self-incrimination in reliance on the protective order. *Id.* In such cases, but for the protective order, the party seeking that testimony would be unable to acquire it. "The classic situation in which a party 'relies' on a protective order is where the party creates material during the

---

**5.** Judge George C. Pratt, concurring in *City of Hartford v. Chase*, 942 F.2d 130, 137–38 (2d Cir.1991), recognized the potential for abuse posed by stipulated blanket protective orders:

A ... troubling tendency accompanies the increasing frequency and scope of confidentiality agreements that are ordered by the court. These agreements are reached by private parties and often involve materials and information that is never even presented to the court. With the signature of a federal judge, however, they are converted into a powerful means of maintaining and enforcing secrecy. Once signed, a confidentiality order, which has converted a private agreement into an order of the

court, requires the court to use its contempt power to enforce the private agreement. There are, of course, situations in which judicial enforcement of private confidentialities may be appropriate, convenient, even necessary. One example is the use of such orders to expedite pretrial discovery by reducing the need for judicial supervision. However, because they often involve information not in the control of the court, and may, as in this case, implicate public concerns, confidentiality orders, when not subject to proper supervision, have a great potential for abuse. For this reason, judges should review such agreements carefully and skeptically before signing them.

course of litigation on the understanding that it will be kept confidential—for example, by signing a settlement document or by giving confidential testimony." *Allen,* 420 F.Supp.2d at 300–01(internal citations omitted). Because a party or a deponent's agreement to provide materials or testimony is based solely on the maintenance and enforceability of the protective order, a stronger presumption against modification must logically apply in such situations.

That was the case in *Martindell,* where the court refused to grant the Government's motion to modify the protective order in order to gain access to the transcripts of testimony given by deponents who had waived their Fifth Amendment rights. 594 F.2d at 295–96. "[T]he·deponents testified in reliance upon the Rule 26(c) protective order, absent which they may have refused to testify." *Id.* at 296. Because those witnesses were "entitled to rely" upon the terms of the order, the court understandably denied the motion to modify. *Id.* at 297. Similarly, the Second Circuit reversed a modification where "the very papers and information" sought by the intervening party would never have existed without the protective order. *Palmieri v. State of New York,* 779 F.2d 861, 865 (2d Cir.1985). The parties' reliance on the confidentiality agreement in producing the discovery and engaging in settlement negotiations required the would-be modifier to meet the *Martindell* standard for modification. *Id.* at 864–85.

■■■ Conversely, where the parties have not given up any rights and indeed would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong. In such cases, the protective order has been granted to parties concerned about disclosing non-public information and as a convenience to avoid time-consuming discovery disputes and document-by-document good cause showings.

In a sense, the DSM defendants are asking the court to shift the good cause burden to

parties seeking to modify the protective order. Having avoided making a good cause showing at the time the protective order was granted, the defendants now seek to prevent Stone Paradise's access to those documents unless it can demonstrate extraordinary circumstances or a compelling need. In *Fournier,* the Court rejected a similar argument, noting that under such a theory, "each party could circumvent the 'good cause' standard for protection and, simultaneously, shift the burden to his adversary to *unseal* a document while benefitting from the more rigorous 'extraordinary circumstances' standard that would apply merely by unilaterally designating any given document as protected." 242 F.Supp.2d at 342. Because the Court never sealed the documents on the basis of a good cause showing, it had "no basis to seal them indefinitely" and granted the request to unseal all discovery materials for trial. *Id.* at 342–43.

■■■ The blanket order here was granted on the basis of a stipulation by the parties. It covers a broad range of discovery materials that have been designated "confidential" by the individual parties. In large multi-district class action lawsuits, it is not uncommon for courts to grant umbrella protective orders in order to keep the proceedings moving rather than being bogged down by a labor-intensive document-by-document good cause inquiry. That said, no absolute privilege applies to much of what the DSM defendants have produced. "As with most evidentiary and discovery privileges recognized by law, 'there is no absolute privilege for trade secrets and similar confidential information.'" *Fed. Open Mkt. Comm. v. Merrill,* 443 U.S. 340, 363, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (quoting 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus § 2043 at 300 (1970)). Therefore, it is likely that the defendants would have been eventually compelled to produce the designated material even in the absence of a protective order unless they could demonstrate the requisite good cause.[6] The order was

---

**6.** Under Rule 26(c), the party seeking the protective order has the burden of proving that good cause exists. *Gambale v. Deutsche Bank AG,* 377 F.3d 133, 142 (2d Cir.2004). That burden re-

quires a party to prove that a "clearly defined and serious injury" would result in the absence of a confidentiality order. *Allen,* 420 F.Supp.2d at 302 (quoting *Cohen v. Metropolitan Life Ins.*

granted primarily to assuage the defendants' concern for keeping their trade secrets and other proprietary information such as customer lists out of the hands of the public or their competitors. To the extent that this constitutes "reliance" on the protective order, that concern is alleviated by requiring Stone Paradise to abide by the protective order's use and disclosure requirements and to submit to this court's personal jurisdiction for any enforcement problems.

### 5. *Other considerations*

 Although the type of materials sought by an intervenor does not affect the nature of reliance on the protective order by the existing parties, it is another important factor for a court to consider when deciding a motion to modify. Whether the collateral litigant could retrieve the same materials in question through its own discovery requests or whether it is attempting to subvert a limitation on discovery, such as the close of the factual record, should be taken into account. Certainly if the litigant could access the same materials and deposition testimony by conducting its own discovery, it is in the interest of judicial efficiency to avoid such duplicative discovery. *See* 8 Wright & Miller § 2044.1 (noting that modification in these situations prevents litigants from having to "reinvent the wheel"). However, if the intervenor is seeking to circumvent limitations on its ability to conduct discovery in its own case or to gain access to materials it would otherwise have no right to access, a court should refuse to modify the protective order. *AT&T*, 407 F.3d at 562 (holding that the plaintiff was not entitled to modification of the protective order because he was attempting to "circumvent the close of discovery" in his collateral action).

At the motion hearing, the DSM defendants cited *Holmes v. United Parcel Service, Inc.*, 2006 WL 1642719, at *3 (D.Kan.2006), as support for the proposition that, where no discovery in the collateral litigation is ongoing, intervention to modify a protective order is not appropriate. In *Holmes*, no discovery

was being conducted because the factual record was closed—the suit was on appeal after being dismissed on a motion for summary judgment. *Id.* By contrast, discovery has not closed in Stone Paradise's suit. Therefore, modification here would not be circumventing any limits on its ability to conduct further discovery. Furthermore, in *Holmes*, though the court denied the motion to modify, it did so in large part because the defendant *already consented to modification* of the protective order as it applied to certain discovery materials sought by the plaintiff, specifically a personnel file. *Id.* The defendants acknowledged that this file would have been discoverable in the collateral litigation, unlike the other documents sought by the intervenor. *Id.* at *2. Therefore, defendants were willing to stipulate to a modification to allow access by the intervenors in their parallel suit, provided it would be subject to the protective order operating in that case. *Id.*

 A litigant's *purpose* in seeking modification of an existing protective order is also relevant for determining whether to grant a modification. Requests to modify protective orders so that the public may access discovery materials is arguably subject to a more stringent presumption against modification because there is no public right of access to discovery materials. *TheStreet.com*, 273 F.3d at 233. In the absence of a compelling need for the public to access sealed documents, courts have generally been reluctant to disturb discovery protective orders for public dissemination.

In the present case, the DSM defendants claim the protective order is necessary primarily to keep their trade secrets and other proprietary information out of the public and their competitors' hands. Because Stone Paradise is not seeking modification in order to make the discovery materials public, and is not a competitor of the defendants any more than the plaintiff-purchasers in the underlying suit, those concerns are resolved by requiring Stone Paradise to be bound by the protective order's use and disclosure requirements; to submit to the personal jurisdiction

---

Co., 2003 WL 1563349, at *1 (S.D.N.Y.2003)). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do

not satisfy the Rule 26(c) test." *Uniroyal Chem. Co., Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D.Conn.2004) (internal quotation omitted).

of this court for purposes of enforcement; to request that the Canadian courts seal all materials obtained through this process; and to decline to offer materials if the Canadian court refuses to grant them confidentiality.

Furthermore, I am limiting the modification's scope to preexisting business documents only, carving out Stone Paradise's request for interrogatory responses, expert reports, and deposition transcripts. This will hopefully alleviate DSM's concerns that Stone Paradise would gain access to material it is not entitled to or is prohibited from acquiring under Canadian rules of civil procedure. If any of the materials procured through this process are later found to be inadmissible in the pending Canadian litigation, presumably the Canadian court will not admit them.

It should be further noted that Stone Paradise does not seek to engage in active discovery in this litigation, but merely to receive discovery materials that have already been produced. The DSM defendants have attempted to characterize Stone Paradise's efforts as conducting illegal discovery prior to class certification in Canada. However, a Canadian appellate court faced with this very same issue has stated that this type of action is best characterized as "evidence-gathering," which is not prohibited under Canadian law prior to class certification and is not prejudicial to the defendants. Pl.'s Ex. E. pps. 13–15. *Vitapharm Canada, Ltd. v. F. Hoffman–La Roche Ltd.*, No. 99–GD–46719, ¶ 4 (Ont.App.Ct. Nov. 23, 2003). Only the presence of the protective order prevents the would-be modifying party from accessing information that would otherwise be freely available. *Id.* Other district courts have also found this reasoning to be persuasive. In *Linerboard*, the Court quoted extensively from the Canadian *Vitapharm* decision, concluding that "defendants will suffer no prejudice from granting movant access to materials that have already been produced to plaintiffs [in the underlying suit]." 333 F.Supp.2d at 341–42. *See also Neurontin*, MDL Docket No. 1629 (D.Mass. Oct. 13, 2006) (order granting motion to intervene) (discussing *Linerboard* and *Vitapharm* to reach a similar conclu-

sion). At the motion hearing, the DSM defendants suggested that it would be considered "active" discovery for Stone Paradise to receive actual copies of the documents rather than merely having an opportunity to read them over. This is taking the definition of "active" discovery, generally understood to mean participating in the discovery process by sending interrogatories or requesting depositions, too far.

## III. Conclusion

The stipulated blanket protective order at issue here grants sweeping protections for discovery materials, has express language that anticipates modification, and generally should not invite the type of reliance that would call for application of the *Martindell* presumption against modification. Therefore, in the exercise of my discretion, I will **GRANT** Stone Paradise's motion to intervene and to modify the protective order subject to the following conditions:

FIRST, the Protective Order will be modified to allow Stone Paradise to access the DSM defendants' preexisting business documents, but not expert reports, depositions, or interrogatories;

SECOND, Stone Paradise will be required to submit to the Protective Order's use and disclosure requirements;

THIRD, Stone Paradise will submit to the personal jurisdiction of this court for purposes of enforcing the Protective Order;

FOURTH, Stone Paradise will request that the Canadian court seal any confidential discovery it files in Canada; and

FIFTH, if the Canadian court declines to seal the discovery, Stone Paradise will not file the material with the court.

Stone Paradise shall file a proposed modification order containing these provisions.

For the foregoing reasons, Stone Paradise's Motion to Intervene for the Limited Purpose of Seeking Modification to the Confidentiality Order **(doc. # 241)** is **GRANTED.**

It is so ordered.