*State of Vermont v. Living Essentials, LLC et al.*, No. 443-7-14 Wncv (Tomasi, J., April 8, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| SUPERIOR COURT | CIVIL DIVISION |
| Washington Unit | Docket No. 443-7-14 Wncv |

State of Vermont,
    Plaintiff

v.

Living Essentials, LLC,
Innovation Ventures, LLC,
    Defendants

### Opinion and Order on Joint Motion for a Protective Order

This is a consumer protection enforcement action brought by the State of Vermont against Defendants in relation to their marketing of various formulations of a beverage known as "5-hour ENERGY®." The parties have jointly sought a protective order, pursuant to a Vt. R. Civ. P. 26(c), to govern the use and disclosure of "confidential" and "highly confidential" materials obtained in the litigation phase of this controversy. The parties have stipulated to most of the terms of the order but disagree on certain other provisions. They have submitted the stipulated terms for approval by the Court and have presented their points of disagreement for resolution by the Court. As the Court advised at the March 15, 2016 hearing, it will resolve the disputes conceptually through this Order and directs that the parties then confer and submit a revised proposed stipulation consistent with this Order.[1]

---

[1] The parties noted at the hearing that the proposed stipulation in the record inadvertently omitted some noncontroversial provisions that the parties wished to include in the final order. Any such corrections should be included in the revised order.

As a general matter, a protective order limited to materials that Defendants in good faith classify as confidential or highly confidential is appropriate in this case and supported by good cause. *Id.* The agreed-upon terms proposed by the parties, subject to the Court's discretion over modifications, are reasonable.

There are three principal disputes between the parties. Defendants seek terms requiring that any access to material designated as highly confidential is to be recorded in a log to better enable it to police any future breaches of the protective order. The State opposes any logging requirement as overly burdensome. Defendants also seek language in several provisions the effect of which would be to prevent counsel for the State of Vermont from discussing *any* materials protected in this case with counsel for other states that are prosecuting similar cases against Defendants. The State requests language that ensures that it will be able to discuss protected materials in its possession with counsel for other prosecuting states who have independently obtained the same material. Defendants also hope to subject materials already produced to the State pursuant to an earlier confidentiality agreement to the terms of this protective order.

1.    The Requirement of an Access Log

The Defendants' proposed logging requirement would only apply to materials that are designated highly confidential. The Court's understanding is that such materials will be very limited. Indeed, Defendants intimated at the hearing that there will be very few, if any, documents that will carry that designation.

There are protective orders already in place in some other states where analogous litigation against the Defendants is currently ongoing. It appears that Washington has a logging requirement similar to what Defendants are seeking, and Indiana appears not to have any logging requirement. The judge in the Oregon case indicated at a discovery hearing that a log would be required for non-lawyers, but the final protective order appears to limit access to attorneys and have no logging requirement.

Based on the foregoing, the Court believes a limited logging requirement is non-burdensome and provides a reasonable way to track who has viewed such documents and on what dates the access occurred. The Court does not find it necessary, however, to extend the logging requirement to counsel of record for the State or other attorneys within the Office of the Attorney General who are designated to have access. They are officers of the court, have elevated ethical obligations, will be required to adhere to the protective order, and are subject to the Court's supervision and discipline.

2.     Discussion of Protected Materials

Defendants seek to prevent attorneys for the State who legitimately have access to protected materials in this case from discussing those materials with attorneys representing other states who are involved in similar litigation against the Defendants. The State resists the imposition of any limitation on its ability to converse freely with attorneys for the other states who independently have obtained access to the same materials. To be clear, the State does not propose to disclose

3

protected materials obtained in this case with attorneys for other states who do not already have access to the same materials. It merely wants to be able to discuss those materials with others who already have them. The issue in controversy is discussion, not disclosure.

As a general matter, this Court has the same reaction as that expressed by the Oregon Court in response to similar arguments by Defendants: "I—this particular provision I'm having a hard time wrapping my mind around how if, as part of the investigation, Oregon knows that Document A exists and they finally get it. Let's say it's the formula. And they also know that Washington has the formula, why [can't they] talk about it. That's the part I don't understand." Transcript of Oral Argument at 17, *State of Oregon v. Living Essentials, Inc.*, No. 14-cv-09149 (Or. Cir. Ct. Nov. 20, 2015).[2]

Defendants argue that allowing such interactions would undermine the protective orders already granted in other states, would allow the attorneys in other states surreptitiously to use Vermont's litigation to acquire discovery materials that they could not acquire in their own states, would allow the attorneys in the prosecuting states to "gang up" on Defendants, and would be in stark contrast to the widely established practice norm of never permitting such cross-jurisdictional discussions in cases of this sort. The Court disagrees.

---

[2] Contrary to Defendants' representation at the hearing in this case, the Oregon Court ruled orally that such attorney discussions are permissible. *See id*. at 37–40. The Oregon final protective order incorporates that ruling at ¶ 12(d)(2).

4

There is no apparent way by which allowing attorneys for the State of Vermont to engage in the proposed discussions with attorneys for other states would undermine protective orders in the other states. Attorneys in those states are subject to their own protective orders and are required to comply with them. If those orders prohibit discussions with Vermont attorneys, then there will be no such interactions.

The same is true of Defendants' argument that other states will use this action to obtain discovery materials unavailable under the rules and orders in their own states. The issue at hand—discussion, not disclosure—should have no effect on the acquisition of protected materials, here or elsewhere.

Defendants also complain that, with concurrent suits against them in multiple states, allowing the attorneys in those states to discuss protected material would allow the prosecuting states an unfair advantage, *i.e.*, the ability to strategize over documents that the states jointly possess. While such discussions could well occur, the real question is whether such exchanges amount to significant and unfair prejudice.

The Court has found no clear authority that this type of potential prejudice provides a proper basis for a protective order under Vt. R. Civ. P. 26(c). The legitimate basis for the order in this case is to protect against the prejudice that Defendants might suffer if materials properly designated confidential or highly confidential are *disclosed* to persons who should not have them. Defendants' more general interest in equalizing the parties' strategic advantages and disadvantages is

outside the scope of a protective order, has no firm basis in the case law, and has nothing to do with their legitimate confidentiality concerns.[3] Defendants' interest in prohibiting attorney discussions about evidence presumably would be no different if this case involved no confidential materials whatsoever. That fact alone shows the tenuous nature of Defendants' position.

Defendants further argued at the hearing in this case that barring attorney discussions in the manner they have urged is standard practice and doing anything different in this case would upset the settled expectations of practitioners and become an unfortunate precedent. No authority was cited for that contention. The terms of protective orders and their modification are widely litigated and reported. The Court has surveyed the reported federal cases. Limitations on attorney discussions apparent in the case law generally appear to be intended to protect the confidentiality of the protected information. The Court was unable to find cases in which a protective order was issued specifically to prevent one person with legitimate access to confidential material from discussing that same material with another person who also had legitimate access to that material. The salient interest evidenced in the case law is in appropriate limitations on use and disclosure, which

---

[3] Defendants asserted at the hearing that allowing attorney discussions would bog the parties down in additional needless discovery and discovery disputes due to those discussions. The Court does not see that as a likely eventuality. Moreover, the Court notes that one virtue of an umbrella protective order largely implemented by the parties without the Court's involvement is that it should grease the wheels of discovery and minimize disputes. If attorney discussions about confidential materials are not permitted, then the State's interest would be to challenge Defendants' confidentiality designations at every turn and the wisdom of having granted a broad protective order at all might become questionable.

are not at issue here.  Even then, some courts will modify protective orders freely to allow the use of protected materials in collateral litigation to avoid the inefficiencies of "duplicative discovery."  *See, e.g., Grove Fresh Distributors, Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 896 (7th Cir. 1994); *cf. In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Lit.*, 255 F.R.D. 308, 317 (D. Conn. 2009) (noting more stringent standard employed in the Second Circuit).  In any event, whether the norm or not, the Court is not persuaded that Rule 26(c) counsels in favor of the relief sought by Defendants.

Defendants next argue that, practically speaking, there is no reasonable way for Vermont's attorneys to know which documents the lawyers of other states already possess without first disclosing the protected material at issue.  This is a legitimate concern, but it is not without remedy.  A large body of documents already was exchanged between Defendants and several states, including Vermont, pursuant to pre-suit investigative demands.  Defendants and the participating states certainly know what materials were produced during that process.  In addition, the Defendants indicated at the hearing that it would not be burdensome for them to produce documents in this case with a Bates prefix indicating which documents already have been produced in connection with the earlier investigative demand.

The documents previously delivered to the states were produced in accordance with their own confidentiality agreement.  That agreement did not prohibit attorneys in different states from conferring regarding the documents.

7

Ultimately, the Court sees no justification for artificially curtailing such discussions, which have already been occurring, through a claw-back protective order in this case.

As for other materials, the Court is not persuaded that there is no reasonable way to discuss jointly possessed confidential material without a substantial risk of inadvertently disclosing materials that should not have been shared. For example, the State may make discovery requests of Defendants for materials produced in the litigation occurring in another state. If that were deemed an appropriate request by the Defendants or the Court, the State would have confirmation that the other state also has the documents produced in response to the request. Alternatively, the Oregon order permits cross-jurisdictional discussions "where it is readily apparent or obvious that the party or counsel already has been provided with authorized access to the Confidential Information."

The Court is not certain whether a generally stated provision of the sort used in Oregon is the best way to resolve this matter in this case. The parties have a far better understanding of the nature of the materials at issue and how and why attorney discussions may unfold. For now, the Court requests that the parties confer and attempt to agree on language that strikes a fair balance between permitting discussions among attorneys who already possess the same documents and avoiding disclosures to attorneys who lack independent access to the protected materials.

3.     <u>Application of the Protective Order to Previously Produced Materials</u>

Lastly, the parties dispute whether the previously produced investigative materials should be exempt from or subject to this protective order.  No doubt, some of those investigative materials will be responsive to discovery requests, will be produced, and will be subject to the protective order in this action -- unless they are specifically excluded from its provisions by definition, as the State proposes.  Defendants persuasively argue, however, that the earlier confidentiality agreement does not have as much detail as the proposed protective order has with regard to how confidential and highly confidential documents are to be handled in actual litigation.  For example, it does not go into specifics with regard to how the documents are to be handled in court filings and depositions.  The Court agrees.

With the dispute regarding cross-jurisdictional discussions resolved in the State's favor, the Court believes it will be beneficial to include the previously produced documents under the umbrella of the instant protective order insofar as it controls the use of the materials in the course of court litigation.  The instant protective order will provide clear guidance to both sides on how to handle documents that have been designative a "confidential" or "highly confidential" in this proceeding.

**<u>Order</u>**

Accordingly, the parties shall confer regarding the terms of a revised order and shall submit it to the Court for approval within 45 days.  If any disagreements

9

remain, which the Court trusts will not occur, the parties shall advise the Court that additional Court intervention is needed.

Electronically signed on April 07, 2016 at 06:08 PM pursuant to V.R.E.F. 7(d).

_____
Timothy B. Tomasi
Superior Court Judge

10